## D. W. HOLT v. J. J. PIE.

ERROR TO THE COURT OF COMMON PLEAS OF CLEARFIELD
COUNTY.

Argued April 16, 1888—Decided May 21, 1888.

Suit was brought for the value of lumber sold and delivered at fixed prices for special kinds on the cars, under an order given and accepted by letter, the order purporting to be in confirmation of a prior verbal contract between the parties: *Held,*

1. That the verified copy of an account from the books of a lumber company for lumber sold to plaintiff and consigned to defendant, was inadmissible as an instrument of evidence against defendant, though it might serve as a memorandum to aid the recollection of those who loaded or shipped the lumber.

2. That the order and acceptance, so far as expressing the terms of the agreement, constituted the contract between the parties, but parol evidence was admissible to prove the actual contract in confirmation of which the letters were written, that the jury should understand what it was as to the terms which were unexpressed.

3. That the order being silent upon the subject of inspection but calling for " good sound hemlock," at a fixed price on the cars, to be " shipped when directed," it clearly contemplated a shipment to such place and at such time as the defendant should direct;

4. Wherefore, the defendant was not under obligation to accept any lumber of other quality than that called for, and it was error to instruct that the order and acceptance provided for an inspection at the point of shipment.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 102 July Term 1886, Sup. Ct.; court below, No. 185 May Term 1885, C. P.

On March 9, 1885, an action in assumpsit was brought by J. J. Pie, surviving partner of Pie & Garnier, against D. W. Holt, to recover the value of 270,743 feet of hemlock lumber, sold and delivered at $8 per thousand, under a special contract claimed to have been made in July, 1881.

At the trial on May 20, 1886, the plaintiff put in evidence the letters, fully quoted in the charge to the jury and in the opinion of the court:

Statement of Facts.

July 6, 1881.

J. J. PIE, ESQ.:

Dear Sir—Confirming our verbal agreement of some days ago, you will please enter the following order of good sound hemlock lumber—in all 1,000,000 feet.

\*    \*    \*    \*    \*    \*    \*    \*

Please acknowledge receipt of this, and oblige,

Yours truly,    D. W. HOLT.

MESSRS. PIE & GARNIER:    July 16, 1881.

Dear Sirs—Referring to your favor of the 6th instant, in relation to the 1 in. and 1¼ in. stuff intended for stock, we will modify the sizes as follows: cut all the smooth logs into the sizes as given; the rough logs cut into 3x6, 3x8, 3x10, and 3x12—12, 14, 16 and 18 feet long.

Yours truly,    D. W. HOLT.

MR. D. W. HOLT:    July 16, 1881.

Dear Sir—In answer to yours of the 16th, I accept the modified bill of lumber, and will go right ahead and cut said bill as fast as possible.    Respectfully,    PIE & GARNIER.

The plaintiff then offered the sworn copy of the original book entries attached to the declaration, claiming that it appeared by the record of the case that defendant had filed an affidavit of defence and did not deny the accuracy of the account so filed; to be followed by evidence showing that the lumber charged was loaded as directed, and by further evidence that plaintiff firm was excused from the delivery of the entire 1,000,000 feet contracted for, by the act of the defendant. The account offered was in the following form:

PIE & GARNIER

To SARGEANT LUMBER CO., DR.

Consigned to D. W. HOLT.

[Then followed an itemized statement showing dates of shipment, car number, number of feet of hemlock lumber, at $8, and amount carried out to each item.]

Making a total of 270,743 feet at $8 per M., $2,165.94.

The offer was objected to by the defendant, as incompetent and irrelevant for various reasons, one of which was that it was inadmissible under the rule of court, the charges not being taken from the plaintiff's books of original entries, but from

the books of another party; and, moreover, the suit was not brought upon a book-account, but upon a special contract.

By the court: Objection overruled, evidence admitted.[1] Afterwards, before any further testimony, the court said: In order that there may be no misapprehension as to the view the court takes of these book entries, we say now that we do not think them sufficient evidence of a special contract. You can govern yourselves accordingly.

The plaintiff then introduced testimony from which it was claimed that, to fill the contract with the defendant, his firm at once commenced to cut, and had cut and piled 300,000 feet or more of lumber such as was ordered, when, about September 20th, they sold out their property to the Sargeant Lumber Co., who by the terms of the purchase were to cut and finish lumber for the completion of the contract with the defendant and ship to them as shipping orders should be received; that about 600,000 feet were ordered to be shipped, and the balance of the bill was never ordered by the defendant, although it was cut and ready for him; that when the shipping had begun trouble arose in consequence of the dockage claimed by the defendant on account of inferior lumber, to which the Sargeant Lumber Co. refused to submit, alleging that they had shipped good, merchantable lumber, carefully inspected when loaded; that shipping ceased and commenced again at various times after correspondence and controversy, until the company at length refused to ship more lumber, alleging that the inspection was unreasonable and unjust, when the plaintiff brought this suit to recover the value of the lumber furnished, which at the contract price was $2,150.

On the part of the defendant, testimony was adduced to sustain the defence, among others, that the order of July 6, 1881, was given in pursuance of a verbal agreement made between the parties two or three days before, by which agreement the plaintiff firm was to furnish 1,000,000 feet of lumber, of which 656,000 feet were for a specified purpose, to fill in part an order which the defendant then had from Griffith, Williams & Co., of Philadelphia, and which he showed to plaintiffs, and from which plaintiffs selected such portions as they thought they could furnish, aggregating said amount last mentioned, and that this lumber was to be shipped to Girard Point

Charge of Court below.

and inspected there, the shipping to commence September 15th and to be completed November 15th, and these terms were expressly agreed to by the plaintiff firm to enable defendant to comply with his contract with Griffith, Williams & Co.; that by reason of the failure of plaintiff firm to perform their contract defendant had been compelled to go into the market and purchase about 412,000 feet of lumber at an excess of cost to them of $4.25 per thousand, his loss thus amounting to about $1,750, and that this excess of cost the plaintiff had promised to pay.

The court, KREBS, P. J., charged the jury and answered the points presented as follows:

It would seem from the evidence in the cause that some time prior to July 6, 1881, the plaintiff and defendant met at the office of the defendant in Philipsburg, and had a conversation about a sale by which one purchased from the other certain hemlock lumber; that subsequently, on July 6, 1881, a paper was made which assumes the form of a letter, and which is addressed to the plaintiff, Justin J. Pie, and in its opening says:

DEAR SIR: Confirming our verbal agreement of some days ago, you will please enter the following order of good sound hemlock lumber—in all, one million feet.

[Then follows a description of the different sizes and lengths, and the quantity of each. Then there is this language:]

The 4-4 and 5-4 can be delayed until after the 2-inch is all sawed out. The 2-inch to be all cut and piled by September 15, 1881, or as much sooner as you can. Cut and pile all you can before the planer reaches you. After the planer is put in you will plane and pile as it comes from the saw, leaving that which is piled until the last. Then it can be planed and put on the cars without extra handling. Plane on one side and two edges to $1\frac{7}{8}$x$5\frac{7}{8}$ inch or $7\frac{7}{8}$ inch as the case may be. It must be up to the size given after planing. Price on the cars for the worked hemlock, $8; for the 4-4 and 5-4, $7.50 on the cars. To be sawed and piled in the yard after the 2-inch is out of the way, and shipped when directed. Please acknowledge receipt of this and oblige,

Yours truly,

D. W. HOLT.

The 4-4 and 5-4 is not to be planed.

Between July 6th and July 16th, for some reason or other to us unknown, and which does not clearly appear in the testimony, there must have been a modification suggested by somebody as to some of this lumber, and on July 16th a paper in the form of a letter is addressed to Messrs. Pie & Garnier, as follows :

MESSRS. PIE & GARNIER : Referring to your favor of the 6th instant, in relation to the $1 \times 1\frac{1}{4}$ inch stuff intended for stock, we will modify the sizes as follows : Cut all the smooth logs into the sizes as given ; the rough logs cut into 3x6, 3x8, 3x10, 3x12, 12, 14, 16, and 18 feet long.

Yours truly,

D. W. HOLT.

On the same day, July 16th, a paper in the form of a letter is addressed to D. W. Holt, as follows :

DEAR SIR : In answer to yours of the 16th instant, I accept the modified bill of lumber, and I will go right ahead and cut said bill as fast as possible.　　　PIE & GARNIER.

Now, gentlemen of the jury, it is well settled law in Pennsylvania, that where one party addresses an ordinary letter, or a letter containing proposals for the performance of certain stipulations to another party, and the party to whom it is addressed accepts the offer or proposal within a reasonable time, it constitutes a contract which is binding upon the parties, and they are required to submit to the terms thus made. It is our duty to instruct you as to what these written papers mean, and the respective duties thereby imposed upon these parties. [We instruct you, as a matter of law, that these three papers which have been offered in evidence constitute a contract between these parties, and that they are bound by the terms thereof, and, in order to escape from liability and responsibility, they must show that some material part of the contract or agreement between the parties that had been entered into and not covered by this written contract, was omitted either by the fraud or misrepresentation of the one party, or by the mistake or accident of the scrivener who wrote it. If you find from the evidence that in the verbal arrangement or agreement a

material part of that was omitted from this paper, either through fraud or accident, or by mistake, and that is shown to your satisfaction by clear, precise and convincing proof—proof that leaves no doubt of that fact in your mind—then of course the part omitted constitutes a part of the agreement between the parties. If you are not satisfied by that kind of proof that we have mentioned, that a part of this verbal agreement referred to here was omitted in the manner which we have stated, and from the causes mentioned—fraud, accident, or mistake—then the parties must submit to what is herein contained.]

Now, we instruct you that under this written contract, or under these papers which taken together we instruct you constitute a contract, it was the duty of the plaintiff to cut and deliver on the cars for $8 per thousand, the kind of lumber herein described as 2x6 in. and 2x8 in. of the different lengths herein mentioned, and if you are satisfied from the evidence that he has either complied with that contract, or that there is such a state of facts, as we shall refer to hereafter, as would excuse him from complying with that part of the contract, then you would have to find in favor of the plaintiff. There is no controversy in this case as to the other lumber. The defendant himself has stated that he released the plaintiff from the performance, or from the delivery of the balance of this lumber—some 400,000 feet, or near that—at the request of the plaintiff, so that that part of the contract is not in controversy in this case. The whole controversy here is about the lumber of the two sizes, 2x6 in. and 2x8 in., and of the various lengths.

[Now, the difficulty in this case arises on the question of the place of inspection. The contract itself does not say where the inspection shall be, in so many plain words ; but, as we instruct you that the place of delivery and the price for the lumber was determined upon its being put upon the cars at Sargeant station, that the legal inference from that is, that that would be the place of inspection, unless you are satisfied by clear, precise and convincing proof that the question of inspection, or place of inspection, was left out of these written papers through the fraud, accident, or mistake of the parties.]

Now, after you have settled that question, gentlemen of the

jury, the next question to determine is: Was there a compliance with the contract on the part of the plaintiff? Did he deliver the lumber? It is not alleged by the plaintiff that he did deliver all of the lumber that he was required to deliver by the terms of these written papers. It is claimed and contended however, that he was excused from the delivery of all of it, because of the mode of inspection, and the place of inspection demanded by the defendant. It is alleged by the plaintiff that the inspection was contrary to the agreement. Now, as we said to you, that depends upon what you find the contract to be. We have instructed you that the papers require the inspection to be at the place where the lumber was to be delivered on the cars, unless, as we stated, you are satisfied that a material part of this contract in regard to the place of inspection was omitted from the papers in the mode we have already indicated. If you find that the place of inspection was to be at the point where the lumber was to be put on the cars for the $8 per thousand, then you must inquire whether or not the inspection at that point was an honest and fair inspection. It was to be " good, sound hemlock lumber "— the contract requires that—and the inspection must be such as to all there was delivered at that point. If you find that he did not place "good, sound hemlock lumber " on the cars— for nothing else than that would fill the contract—or if that was the point of inspection, and there was hemlock put upon the cars that was not good, sound hemlock, the defendant was not bound to receive it nor pay for it. If, however, you determine, under the rule we have given you, that the point of inspection was at Girard Point, and that that was the place where the lumber was to be inspected, then the plaintiff would be required to perform this contract under that arrangement; and if the inspection there, as claimed by the defendant, was an honest and fair inspection, not unjust or unreasonable, then the plaintiff would be bound to comply with the contract, with that point as the point of inspection, and if he has not, then he must answer to the defendant, unless he was excused.

Now, in order to excuse him from the performance of this contract, he must at all times have shown a willingness to perform his part of the contract, and the excuse for not performing it must come from some act on the part of the defend-

ant, or of those to whom the lumber was being shipped, at his instance or direction. So that if you determine that the point of inspection was at Girard Point, in the mode we have indicated, then in order to relieve the plaintiff, it must be clearly apparent to you that that inspection was manifestly unjust or unfair. Even though it may have been severe, yet if it was not manifestly unjust or unfair, the plaintiff would not be relieved from the performance of his part of the contract to ship this lumber. [If you find that the plaintiff was excused from the performance of the contract because the inspection was not made at the point where the lumber was put on the cars, and where the price was fixed, which was the point of delivery, of course the question of damages does not arise, and he would be entitled to recover in this case for the amount of lumber thus delivered, that is, if he is excused. If the inspection there was an honest and fair inspection, and that was the point of inspection, he was not bound to submit or accept it at any other place ; and if the defendant insisted upon an inspection anywhere else, the plaintiff was not bound to ship the lumber.] [12] But if the point of inspection was at Girard Point, and that inspection was fair and honest, and the plaintiff has not complied with or shipped the amount of lumber necessary, then he must answer to the defendant for the damages which resulted to defendant by reason of his failure to comply with this contract. That, of course, is dependent upon the question that we have before stated, that in order to excuse him from the delivery of the lumber, under the inspection at Girard Point—if you find that to be the place of inspection—you must be already satisfied by the proof in the cause that the inspection was so manifestly unjust or unfair that he was not called upon to submit to it.

Now then, if he was not excused, and that was the point where the inspection was to be, then, under the rule we have given you, your next inquiry would be as to the measure of damages. [Of course, the question of damages does not arise if you find that the point of inspection was at the place where the lumber was delivered on the cars and the price fixed, and he was excused because the defendant insisted upon the inspection being at another point or place. He would be excused, and would be entitled to recover whatever he satisfied you by proof was the quantity of lumber delivered.] [13]

Charge of Court below.

We treat the case now as if the pleadings were such on the record that this whole question of defalcation and damages was regularly before us. Under the plea of non assumpsit it would not be so, but the parties to this case by their counsel have treated it as though the pleadings were of such a character, and the question of damages was to be settled in this case; therefore we so treat it, and instruct you as we believe the law to be on that subject.

If the plaintiff was not excused from the performance of his contract, and the defendant was obliged to go and buy other lumber to take the place of the lumber that plaintiff contracted to deliver, then defendant is entitled to defalk from the plaintiff's claim the difference between the market price of the lumber which plaintiff agreed to deliver—that is, the market price at the point of delivery—and the price that plaintiff was to receive from the defendant. He would not be entitled to go into the market and buy at any price and come in and defalk the price. He could only buy at a fair market value for that kind of lumber, and at the market price at the point where the inspection was to be. So that if this inspection was to be made at Sargeant Station, and the plaintiff was not excused from the performance of this contract, the defendant would be entitled to go into the market there and buy the lumber at the market price, and if he had to pay more for it than he agreed to pay the plaintiff, he would be entitled to deduct the difference from the plaintiff's bill in this case. In the same way if the plaintiff was to deliver this lumber and submit to an inspection at Girard Point, the defendant would have the right to go into the market there and buy lumber at the market value, and the difference between what he paid for it, and what the plaintiff was to receive from him could be defalked from plaintiff's claim in this case. . . . . .

Now there is a great deal of evidence in this case, much of which bears upon the question of what the contract between these parties was. [The parol or verbal agreement, which is claimed here by Mr. Holt, in order to be entitled to consideration at your hands, it must first appear to you, by convincing, clear and precise proof, to have been omitted, as we said before, by fraud, accident, or mistake; because the law is such, when parties reduce their agreements to writing, that

they shall be bound by the writing, unless it does appear to the jury that a material part was omitted in the mode, or in the way we have indicated. If these papers constitute the whole of that agreement, and no part of it was omitted by fraud, accident, or mistake, then the plaintiff would be entitled to recover in this case for lumber delivered, less this question of repairs in regard to the planer.]⁶ If you find in addition to that, that he was excused from the performance of this contract because the defendant insisted that the inspection should be at Girard Point, then as we instructed you before, under the written papers, the point of inspection would be at the place where the lumber was put on the cars. But if that was not the point of inspection, and you so find, and are satisfied under the rules we have laid down, then you must determine whether or not Mr. Holt has suffered damage, and if so, how much? When you come to that question of damage you must determine the amount of it in the way we have indicated. If he would have the right to go into the market and buy lumber at a fair market value, as we have already said, you will deduct the difference between what he was obliged to pay for it, and what he had agreed to pay Mr. Pie, from the plaintiff's claim, and if that be more than the plaintiff's claim in this case, of course it would wipe it out, and there could be no recovery at all. . . . .

The defendant has submitted certain propositions upon which we are asked to instruct you:

1. The question as to what was the real contract between the parties is one of fact for the jury which they must determine from all the evidence in the cause.

Answer: Our answer to that is: That the contract between these parties is the papers in writing, unless you find that material parts have been omitted therefrom by the fraud, accident, or mistake of either.⁷

2. As the letter of July 6, 1881, refers to a prior verbal contract, that verbal agreement as well as the letter is to be taken into consideration by the jury in determining the rights of the parties.

Answer: We answer that by saying, that those papers constitute an agreement between the parties, and the parol evidence of a former conversation could not be considered by the jury,

unless a material part of that verbal agreement was omitted, as we have stated before.[8]

3. If the jury believe that by the parol contract between the parties, to which the letter of July 6, 1881, refers, the lumber was to be inspected at the point of destination, then that point is to be taken as the point of inspection, there being nothing in the letter to contradict such stipulation, or to fix another point for inspection.

With that we read the fourth point:

4. If the jury believe from the evidence that the contract between the parties was that the lumber was to be inspected at the point of destination, then the plaintiff is bound by the inspection at that point unless they are also satisfied from the evidence that the inspection so made, was not merely rigid or severe, but was manifestly unfair or unjust.

Answer: To these two points we make answer, as we said before, that we believe the law to be that the written papers constitute an agreement between the parties, and that the question of inspection cannot enter into the consideration of the jury as to a point different from the point of delivery on the cars, unless you find that this was omitted from the contract by fraud, accident or mistake.[14]

The plaintiff has submitted the following propositions:

1. That the contract sued upon, and by which the parties to this issue are bound, being in writing, is the only contract to be considered by the jury.

Answer: We answer that with the qualification that the written papers constitute the contract unless, as we have repeatedly said, there was a material part of it omitted through fraud, accident or mistake.[9]

3. That the effect of the alleged contract being to add to, vary, and contradict the written contract, the testimony adduced upon the subject of the previous parol contract should not be considered by the jury in making up their verdict.

Answer: That would be true, gentlemen of the jury, unless the alleged part omitted from these written papers was left out by fraud, accident, or mistake. If it was, then the jury have a right to consider it.[10]

5. That the point of delivery, under the written contract, was on the cars at Sargeant Station, and it was not permissible

to show any other point of delivery by parol, being in contradiction of the writing, and alleged to have been made previously to the execution of the written contract.

Answer: We answer that point in this way: We have already instructed you that under the written papers the point of delivery was at Sargeant Station, that is, on the cars at that place, because that is the place where this lumber was to be delivered on the cars. But it is permissible to contradict that paper by evidence tending to show that parts of the verbal agreement were not embodied therein because of some fraud, accident or mistake.[15]

The verdict of the jury was in favor of the plaintiff for $1,892.88. Judgment having been entered, the defendant took this writ, assigning as error inter alia:

1. The admission of plaintiff's offer.[1]

5-6. The parts of the charge embraced in [ ][5 6]

7-8. The answers to the defendant's points.[7 8]

9-10. The answers to the plaintiff's points.[9 10]

11-13. The parts of the charge embraced in [ ][11 to 13]

14. The answer to the defendant's point.[14]

15. The answer to plaintiff's point.[15]

*Mr. Thomas H. Murray* (with him *Mr. Cyrus Gordon*), for the plaintiff in error:

1. The sworn copy of the account, being an account between other parties than those to the suit, and not in form or substance such as is contemplated by the rule of court, nor verified as required by that rule, and, moreover, offered in a suit on a special contract, was inadmissible: Alexander v. Hoffman, 5 W. & S. 382; Eshleman v. Harnish, 76 Pa. 98; Winter v. Newell, 49 Pa. 517.

2. The ruling that the parol contract could be considered only "upon clear, precise and convincing proof, proof which leaves no doubt of the fact," of an omission from the writing by fraud, accident or mistake, is inapplicable. The rule as to such high grade of proof applies only where the matter offered is contradictory of, and not merely supplementary to, the writing: Spencer v. Colt, 89 Pa. 314; Hoopes v. Beale, 90 Pa. 82; Quick v. Van Auken, 3 Penny. 469; Ott v. Oyer, 106 Pa. 6. The law does not require proof so convincing as to leave no

doubt resting on the minds of the jurors: Young v. Edwards, 72 Pa. 257.

3. But the writing in this case expressly refers to the parol agreement and thereby makes it a part of the contract, on the same principle that one writing offered, which refers to another, draws that other to itself and gives it competency and credibility when otherwise it might be without those qualities; or, as proof of a part of a conversation requires the admission of all of it. If this view be correct, and the parol agreement as well as the order was part of the contract, of course no special degree of proof was requisite: Broom's Max., 673; Harper v. Kean, 11 S. & R. 280; 1 Greenl. Ev., § 228 a.; Cunningham v. Shaw, 7 Pa. 401; Wolf Creek Coal Co. v. Schultz, 71 Pa. 180; Burgan v. Cahoon, 1 Penny. 320; Monocacy Bridge Co. v. Amer. Iron Bridge Mfg. Co., 83 Pa. 517.

4. The writing in this case, by its nature and terms, does not purport to be a complete contract between the parties. It is designated on its face as an order, and by the reply thereto, as a bill for lumber. It fixes only size, mode of planing, time of piling, and price. It not only refers to a prior parol contract, but also incidentally to the planer, which plaintiff says in his testimony was provided for by a prior parol contract. Its purpose and intent was not an exclusive written contract, as illustrated by the following cases: Miller v. Fichthorn, 31 Pa. 256; B. & P. Steamboat Co. v. Brown, 54 Pa. 81; Brigg v. Hilton, (N. Y.), 1 Cent. R. 307; Mobile etc. R. Co. v. Jurey, 111 U. S. 584.

5. Sargeant's station is not designated by the writing of July 6, 1881, either as the place of delivery or of inspection. From the terms of the order it is by no means clear that it is to be regarded as the place of delivery. It is at least a doubtful inference from the language used, and upon this inference is based the other inference as to the place of inspection. It is therefore purely a matter of construction, based upon inference or presumption, and therefore liable to be rebutted as ordinary presumptions are, by ordinary proof: Musselman v. Stoner, 31 Pa. 265; Bank v. Fordyce, 9 Pa. 275; Barnhart v. Riddle, 29 Pa. 92; Barclay v. Weaver, 19 Pa. 396; Aldridge v. Eshleman, 46 Pa. 420; Buckley's App., 48 Pa. 495; B. & P. Steamboat Co. v. Brown, 54 Pa. 81.

*Mr. Frank Fielding* and *Mr. H. C. McCormick*, for the defendant in error:

1. Granted, that the copy of book entries should not have been read to the jury, yet there was positive testimony that the defendant admitted that the quantity of lumber received amounted to about the sum claimed. So that if the copy was not evidence, it was supplemented by sufficient proof to warrant the finding of the jury, and its admission, therefore, did the defendant no harm. It was equivalent to an account rendered, which being unobjected to becomes an account stated.

2. The prior verbal contract was merged in the written contract which was complete in all its terms and conditions. The written contract cannot be changed, varied, added to, or contradicted by evidence of what the original parol agreement was, there being no offer to show that there was any contemporaneous parol condition or stipulation omitted : Stine v. Sherk, 1 W. & S. 202; Caley v. Hoopes, 86 Pa. 497; Coen v. Adamson, 9 Cent. R. 817; Bowman v. Tagg, 6 Cent. R. 563; Lane's App., 112 Pa. 499; Phillips v. Meily, 106 Pa. 536; North and West Br. R. Co. v. Swank, 105 Pa. 555; Martin v. Berens, 67 Pa. 459; Gehres v. Crawford, 8 Cent. R. 497; Spencer v. Colt, 89 Pa. 314; Penn. R. Co. v. Shay, 82 Pa. 198.

3. When the learned judge stated to the jury that the place of delivery was the place of inspection, he did not go outside of the plain terms of the contract, because there can be no question or dispute as to where the place of delivery was, from the terms of the written contract; and, when the lumber was loaded on the cars at that place, it passed out of the control of the seller and the purchaser was liable for the price.

Opinion, Mr. Justice Williams :

The objection to the admission of the copy of the account of the Sargeant Lumber Company against Pie, as evidence in this action brought by Pie against Holt, was well taken. The action was brought by Pie to recover for lumber delivered to Holt under a contract. It was necessary to prove the quantity of the lumber so delivered, and for this purpose an account kept by the Sargeant Lumber Company, showing the quantity of lumber furnished by the company to Pie, was offered and received. If the same carloads of lumber were sent to Holt from

the yard of the lumber company, still we do not see how this account was admissible as an instrument of evidence. It might serve as a memorandum to aid the memory of the men who put the lumber upon the cars or shipped it to Holt, but as an account of the lumber company it was inadmissible in this action.

The assignments from the sixth to the tenth, inclusive, relate to the instructions of the court upon the effect of the letters which formed the only written evidence of the contract. They are three in number. The first, written on July 6, 1881, begins thus :—

" Confirming our verbal contract of some days ago you will please enter the following order of good, sound hemlock lumber, in all one million feet." Then follows the order giving a list of sizes, lengths, etc., and at the end of the letter occurs these words : " Price on the cars for the worked hemlock, $8; for the 4-4 and 5-4, $7.50 on the cars. To be sawed and piled on the yard after the 2-inch is out of the way, and shipped when directed. Please acknowledge receipt of this and oblige, Yours truly,

" D. W. HOLT."

The second is also from Holt, dated July 16, 1881, and modifies the sizes of a part of the bill.

The third bears the same date, and is as follows :

" DEAR SIR : In answer to yours of the 16th inst., I accept the modified bill of lumber, and I will go right ahead and cut said bill as fast as possible. Respectfully,

" PIE & GARNIER."

So far as this order and acceptance express terms, they constitute the contract between the parties. They fix the amount of lumber to be furnished; the sizes into which it is to be cut; the kind of finish, and the price on the cars. But the order refers to a " verbal agreement of some days ago," and professes to be in confirmation of it. It does not profess to recite that agreement, or be a substitute for it, but to confirm, or conform to it. The offer to prove what that verbal contract was, as to any omitted terms or stipulations, was not, therefore, an effort to change the terms of a written agreement, but to show the whole agreement of which the letters were but part. This the court refused permission to do unless it was first

shown that the stipulations not found in the letters were omitted by fraud, accident, or mistake. But this was not alleged. The letters consist of Holt's order, telling what lumber he wanted, and at what price, and of Pie's acceptance of the order and promise to cut the lumber as soon as possible. So far the verbal agreement was reduced to writing, or "confirmed;" but whatever else there was of the agreement the jury had a right to know.. The offer was not to alter the agreement contained in the letters, but to prove the actual contract in conformity with which the letters had been written, so that the jury might understand what it was as to such subjects as were not within the range or purview of the order and acceptance.

The remaining assignments of error are to that portion of the charge which relates to the inspection of the lumber. The order was silent upon this subject, but it called for "good, sound hemlock" at a fixed price on the cars; to be "shipped when directed." This clearly contemplated a shipment by Pie to such place and at such time as Holt should direct. If, when the lumber reached its destination, wherever that might be, it was not "good, sound hemlock," such as Holt ordered and Pie agreed to furnish, to that extent the performance of the contract was defective. Holt was not under obligation to accept any quality of lumber except that for which he had contracted, and he had a right to decline to pay for lower grades. It was error, therefore, to hold that the order or letter of July 6th and its acceptance provided for an inspection at the point of shipment.

The undertaking of Pie was to ship when directed good, sound hemlock. If he did not do this, Holt was at liberty to refuse to receive the lumber. He was bound to pay for what he ordered, but he was not bound to pay for any other quality or kind of lumber. For the reasons thus indicated,

The judgment is reversed, and a venire facias de novo awarded.