Decided July 21, rehearing denied conditionally October 6, 1908.

## EATON v. BLACKBURN.

[96 Pac. 870; 97 Pac. 539.]

SALES—BUYER'S RIGHT TO INSPECT GOODS.

1. Where hay was sold under an agreement for delivery f. o. b. cars at the place of shipment to the buyers, the buyers had the right to inspect it after its arrival at its destination; they not being bound to inspect it at the place of shipment, where no place or time of payment, inspection, or acceptance was stipulated in the contract.

APPEAL AND ERROR—REVIEW—FINDINGS—CONCLUSIVENESS.

2. A verdict concludes disputed questions of fact.

SALES—BUYER'S RIGHT TO INSPECT GOODS.

3. Where goods are to be delivered to a common carrier by the seller, to be forwarded to the buyer at a distant point, and no provision is made for

inspection and acceptance before or at the time of shipment, the buyer is entitled to a reasonable time, after the goods arrive, in which to exercise the right of inspection, and to accept or reject them if they do not comply with the contract.

SAME—WHEN PRICE BECOMES DUE.

4. Where no time or place of payment for goods is specified in the contract of sale, the price does not become due until the goods are delivered.

SAME—WAIVER OF RIGHT TO REJECT GOODS—QUESTION FOR JURY.

5. Whether buyers of hay waived the right to reject it for defective quality after its delivery by the carrier, held, under the evidence, a jury question.

SAME.

6. That buyers of hay offered to sell it, before inspecting it, on its delivery by the carrier did not amount to an acceptance.

SAME.

7. That an employee of buyers of a shipment of hay unauthorizedly sold a bale of it did not amount to an acceptance by the buyers, where they repudiated the sale upon learning of it, and directed the employee to replace the bale sold.

APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF TESTIMONY.

8. In an action for the price of hay, defended on the ground that delivery was rejected for defective quality, any error in allowing the buyers to show that one to whom they attempted to resell did not take the hay was harmless, where he was called as a witness and testified fully as to the quality of the hay.

APPEAL AND ERROR—REMITTITUR—ERROR IN INSTRUCTION.

9. Though an instruction that if plaintiff agreed to sell and deliver to defendants fifty tons of good merchantable hay, and failed to do so, defendants would be entitled to a verdict for its market value at place of delivery, less the contract price and freight, was erroneous, because it was admitted that the failure to deliver, except as to the car in dispute, was at defendants request, yet the error not having affected the real controversy, and the amount of damages allowed on account thereof being severable from the rest of the verdict, a new trial will not be granted because thereof, if such damages be remitted.

From Baker: WILLIAM SMITH, Judge.

This is an action by A. E. Eaton against Edward Blackburn and C. H. Breck, co-partners, doing business under the firm name and style of Blackburn & Breck. The cause was tried before a jury, and a verdict rendered in favor of the defendants, and from the judgment rendered thereon, plaintiff appeals.

Statement by MR. CHIEF JUSTICE BEAN.

This is an action to recover the purchase price of two car loads of hay. The defense is that the hay, which plaintiff agreed to sell and deliver to defendants, was

to be "good, number one, merchantable hay," and that furnished, was not of this quality, for which reason it was rejected. The defendants are commission merchants, residing and doing business in Baker City. Plaintiff resides in Union County, some miles distant from Baker. In March, 1906, he contracted and agreed to sell to defendants five car loads of hay, for use in their business, at $11.50 per ton, f. o. b. cars, Nodine Spur, Union County. The contract was made at Baker City, and defendants were to pay the freight from place of shipment to that point, but nothing was said about the time or place of payment, or the inspection or acceptance of the hay. Shortly after making the contract, plaintiff loaded two cars with hay at Nodine Spur, and the same were carried by the railroad company to Baker, reaching there Sunday morning, March 25th. On the following day defendants, before they had examined or inspected the hay, made some effort to sell it, but were unable to do so. On the morning of the 27th, in company with Abercrombie—a prospective purchaser—Mr. Breck, one of defendants, opened the cars, in which the hay had been shipped, and examined it, but Abercrombie was unwilling to purchase. In the afternoon of the same day they made a further and more careful examination, and Breck, claiming that the hay was not of the kind and quality contracted for, refused to accept it, and so notified plaintiff and the railroad company on the following morning. At the time Breck and Abercrombie were examining the hay on the afternoon of the 27th, two bales were taken out of one of the cars for inspection, and on the same afternoon one of defendants' employees, without their knowledge or authority, sold one of such bales to a shipper of stock passing through Baker City, and paid the money over to defendants. As soon as they learned of the sale, they repudiated the act of their employee, and directed him to return to the car another bale equally as good, or better, than

the one sold by him. At the time of the trial it was
contended by plaintiff that, under the contract between
him and defendants, it was the duty of defendants to
inspect and accept or reject the hay at Nodine Spur,
where it was to be loaded on the cars; and, if they
neglected to do so, they were bound to receive such hay
as it was actually shipped, and rely upon a claim of
damages for breach of contract, if it was of inferior
kind and quality, but, if this was not so, defendants'
conduct, after the hay reach Baker City, was such as
to amount, in law, to an acceptance thereof. The court
instructed the jury that if the hay, delivered on the cars
by plaintiff at Nodine Spur, was substantially the kind
and quality called for by the contract, it would amount
to a full and complete performance, and enable him to
recover the contract price, whether the hay was subse-
quently accepted by defendants or not; and, if the hay
was different or inferior to that which plaintiff agreed
to sell, notwithstanding which the defendants accepted
it, or did something amounting to an acceptance, they
could not thereafter repudiate their liability by returning
or tendering a return of the hay, but that defendants
had a reasonable time in which to inspect the hay after
it reached Baker City, and if it was, in fact, of an
inferior quality, and not according to the contract, they
could reject it, and refuse to accept or pay for it, and
if they did so, plaintiff could not recover in this action.
The court also held that the question as to whether
defendants accepted the hay after it reached Baker,
was one of fact, to be determined by the jury under
proper instructions from the court, which were given
accordingly. The cause was tried before a jury, and a
verdict rendered in favor of defendants. From the judg-
ment subsequently rendered thereon, this appeal is taken.
The errors assigned are in the giving and refusing of
certain instructions and admission of testimony.

AFFIRMED.

For appellants there was a brief and oral arguments by *Messrs. Lomax & Anderson.*

For respondents there was a brief and oral arguments by *Mr. John L. Rand* and *Mr. Samuel White.* ·

Opinion by MR. CHIEF JUSTICE BEAN.

1. The principal point relied upon by plaintiff for a reversal of the judgment is the ruling of the court that, under the contract for the sale of ·hay in question, defendants had a right to inspect it after it reached Baker City, and, if it did not conform to the contract, to refuse to accept or pay for it. The argument is that the place of inspection and acceptance or rejection was at Nodine Spur, where the hay was to be delivered by the plaintiff, f. o. b. cars; and, if defendants neglected to exercise the right of inspection at that time and place, they were liable for the value of the hay so delivered. But we do not so find the law. No place or time of payment or of inspection or· acceptance was stipulated in the contract. All parties concur in this point. The contract was made between plaintiff and defendant Breck. These gentlemen both say that Breck met plaintiff at the depot at Baker City, and inquired of him if he had any hay for sale, and that he (plaintiff) said he had; that the price was $11.50 per ton, f. o. b. cars at Nodine Spur, and that Breck said he would take five car loads at that price, and under the conditions named.

2. The only difference between .the witnesses is in reference to the terms of the contract regarding the kind and quality of hay to be delivered, and that matter is concluded by the verdict of the jury. Some stress is laid, by counsel for plaintiff, upon a statement by Mr. Breck, on cross-examination, that he would have had the privilege of examining the hay if he had gone down to Nodine Spur, but this was merely the opinion of the witness, and was not part of the contract.

3. Indeed, when asked as to whether he was to be present at Nodine Spur to receive the hay for shipment, he replied:

"Mr. Eaton knew it was impossible for me to be there. There was no understanding of that kind at all."

So that it is manifest from the testimony that there was no time or place of inspection or acceptance agreed upon by the parties, or for the payment of the purchase price. The payment, therefore, became due and payable on a complete delivery, and there could be no such delivery without an opportunity for inspection. Under an executory contract for the future sale and delivery of goods of a specified quality, the quality is a part of the description, and the seller is bound to furnish goods actually complying with such description. If he tenders articles of inferior quality, the vendee is not bound to accept them; and, unless he does so, he is not liable therefor. This necessarily gives to the vendee the right, and imposes upon him the duty, of inspection, and he must therefore be given an opportunity to make such inspection before becoming liable for the purchase price; unless the contract otherwise provides; and where articles are to be delivered to a common carrier by the vendor, to be forwarded to the vendee at a distant point, and no provision is made for inspection and acceptance before or at the time of shipment, the vendee is entitled, under the law, to a reasonable time, after the goods arrive at their destination, in which to exercise the right of inspection, and to accept or reject them, if they do not comply with the contract. *Brigham* v. *Hibbard,* 28 Or. 386 (43 Pac. 383) ; *Johnson* v. *Hibbard,* 29 Or. 186 (44 Pac. 287: 54 Am. Rep. 787) ; *Steiger* v. *Fronhofer,* 43 Or. 178 (72 Pac. 693) ; *Puritan Mfg. Co.* v. *Westermire,* 47 Or. 557 (84 Pac. 797).

*Pierson* v. *Crooks,* 115 N. Y. 539 (22 N. E. 349: 12 Am. Rep. 831), is much in point. That case construed a contract between a New York importer and a London

dealer, for the sale of iron by the latter to the former. The iron was to be delivered f. o. b. at Liverpool, and paid for by bills of exchange at 60 days, on delivery of the shipping documents at New York. The iron shipped by the London dealer was not in compliance with the contract, and the New York merchant refused to accept it, and brought an action against the vendor to recover money paid for duties and expenses at the port of New York. The seller contended that the buyer was bound to inspect the iron and ascertain its quality at Liverpool; and, not having done so, it was in law an acceptance, which precluded him from subsequently questioning the quality or returning the goods. But the court refused to concur in this view, and Mr. Justice ANDREWS says: "When and at what place the right of inspection was to be exercised was not definitely fixed by the contract. The intention of the parties, when ascertained, is to govern. They might have provided that the inspection should be made either at Liverpool or at New York. The contract is silent on this point; and the defendants insist that, in the absence of express words, the law ascertains and fixes the intention that examination should be made at the place where the defendants were to deliver the iron, to-wit, at Liverpool. We are, however, of the opinion that where goods are ordered of a specific quality, which the vendor undertakes to deliver to a carrier, to be forwarded to the vendee at a distant place, to be paid for on arrival, the right of inspection, in the absence of any specific provision in the contract, continues until the goods are received and accepted at their ultimate destination, and that the carrier is not the agent of the vendee to accept the goods as corresponding with the contract, although he may be his agent to receive and transport them." In answer to the argument made there, as here, that the title vested in the vendee upon the delivery of the goods to the common carrier, and that the vesting of such title

implies an acceptance, and is inconsistent with the alleged right of inspection and rejection of the goods on their arrival at the place of destination, the learned justice says: "But assuming that the title to the iron, for some purpose, vested in the plaintiffs on delivery to the steamers, it was, as between the vendors and vendees, a conditional title, subject to the right of inspection and rejection of the inferior quality on arrival at New York. * * The ordering of goods of a specific quality by a distant purchaser of a manufacturer or dealer, with directions to ship them by a carrier, is one of the most frequent commercial transactions. It would be a most embarrassing and inconvenient rule—more injurious even to the dealer or manufacturer than to the purchasers—if delivery to the carrier was held to conclude the party giving the order from rejecting the goods on arrival, if found not to be of the quality ordered."

The same doctrine was applied by the Supreme Court of Massachusetts in *Alden* v. *Hart,* 161 Mass. 576 (37 N. E. 742). In that case the defendants, residing at New Bedford, ordered a quality of coal to be shipped from Weehawken, N. J., by certain line of barges, defendants to pay the freight. The coal shipped was not of the kind and quality ordered, and the court held that the defendants had the right to reject it on its arrival at New Bedford, Mr. Chief Justice FIELD remarking: "Whether in such case as this is the title to the property passes to the vendee when the coal is delivered on board the barge is not free from doubt, and we have not found it necessary to decide the question. If it be assumed, in favor of the plaintiffs, that the title to this coal passed to the defendants when it was selected by the plaintiffs, and laden free on board upon the barge at Weehawken, and when bills of lading were given to the plaintiffs, under which the cargo was to be delivered to the defendants or their assigns at the port of New Bedford, they paying the freight, we are yet of the

opinion that the rulings at the trial were correct. If the title passed to the defendants, it was a conditional title, and the condition was that the coal should be found to be of the quality purchased, and the defendants could reject the coal if, upon examination, it did not conform to the implied warranty that it should be merchantable." To the same purport, see *Morse et al.* v. *Moore,* 83 Me. 473 (22 Atl. 362: 13 L. R. A. 224: 23 Am. Rep. 783) ; *Holt* v. *Pie,* 120 Pa. 425 (14 Atl. 389) ; *Fogle* v. *Brubaker,* 122 Pa. 7 (15 Atl. 692).

4. We are of the opinion, therefore, that no error was committed by the court below in its ruling on this phase of the case. In *Samuel M. Lawder & Sons Co.* v. *Albert Mackie Grocery Co.,* 97 Md. 1 (54 Atl. 634: 62 L. R. A. 795), cited by plaintiff, the contract required payment to be made for the goods at the place of shipment, which the court held was necessarily inconsistent with a right of inspection at another place. But here, as we have seen, no time or place of payment was specified, and therefore it did not become due until the goods were delivered. The cases of *Barr* v. *Borthwick,* 19 Or. 578 (25 Pac. 360), and *Meyer* v. *Thompson,* 16 Or. 194 (18 Pac. 16), have no particular bearing here. The question in the former case was one of title, and in the latter whether there had been a sufficient delivery to take a parol contract, for the sale of personal property, out of the statute of fraud.

5. It is also insisted that defendants waived the right to reject the hay for defective quality, by their action and conduct in relation thereto after it reached Baker City. But this question was for the jury, and, we think, was fairly submitted to them. The defendants were not precluded from rejecting the hay by merely receiving it. They still had a reasonable time in which to inspect and reject it, if not according to the contract.

6. Nor did their offer to sell and dispose of the hay, before they had examined it, amount to an acceptance.

This was before they ascertained that it was of an inferior quality, and was on the assumption that plaintiff had complied with his contract, and shipped hay of the kind and quality agreed upon. It was therefore not conclusive in law of an intent to accept the hay, in performance of the contract (Benjamin, Sales, § 703).

7. Nor, again, was the unauthorized sale of one bale by an employee of defendants conclusive of the acceptance by them of the entire shipment. The evidence shows or tends to show,-that the employee had no authority, either express or implied, to make such sale, and that it was promptly repudiated by the defendants as soon as they learned of it. The question of the acceptance of goods is ordinarily for the jury (Benjamin, Sales, § 895), and there is nothing in this record to take this case out of the operation of the rule.

8. After the defendant Breck had testified on the trial that, in company with Abercrombie, he examined the hay on the morning of the 27th of March, and found that it was not of the kind and quality called for by the contract between his firm and the plaintiff, he was asked, by his counsel, the question: "Did Mr. Abercrombie take it?" and was permitted, over the objection and exception of plaintiff, to answer, "No, sir." It is claimed that the admission of this testimony was error, and calculated to mislead the jury. It was probably admitted as tending to show the hay was not merchantable, because Abercrombie, after examining it, refused to purchase it. But as he was subsequently called as a witness by defendants, and testified fully as to the quality of the hay, it is not apparent how the ruling assigned could have been prejudicial to the plaintiff even if erroneous.

Finding no error in the record, the judgment is affirmed.                                        AFFIRMED.

Denied conditionally October 6, 1908.

## ON PETITION FOR REHEARING.

[97 Pac. 539.]

. Opinion by MR. CHIEF JUSTICE BEAN.

9. The court instructed the jury, in substance, that if the plaintiff agreed to sell and deliver to defendants 50 tons of good merchantable hay, and failed to do so, the defendants would be entitled to a verdict for the market value of such hay at the place of delivery, less the contract price, with freight added. The jury found a verdict in favor of defendants, and assessed their damages at $10.

The attention of the court is called to the fact, by a petition for rehearing, that the instruction was erroneous, because it is admitted that the failure of the plaintiff to deliver the hay, except the car load in dispute, was by the consent and at the request of defendants, and therefore they are not entitled to recover damages for such failure. The error in giving the instruction referred to, however, did not affect the real controversy between the parties, and, as the amount of damages allowed by the jury can be segregated from the rest of the verdict, the error does not call for a reversal of the case, if the defendants will, within 10 days, remit the amount of such damages; otherwise, a new trial will be ordered. *Mackey* v. *Olssen,* 12 Or. 429 (8 Pac. 357); *Cochran* v. *Baker,* 34 Or. 555 (52 Pac. 520: 56 Pac. 641).

The other points made in the petition were all considered by the court on the former hearing, and need not be further alluded to at this time.

AFFIRMED: REHEARING CONDITIONALLY DENIED.