**INDUSTRIAL LUMBER CO. v. NORTHSIDE LUMBER & BUILDING CO.** (No. 2150.)*

(Court of Civil Appeals of Texas. Amarillo. June 20, 1923. Rehearing Denied Oct. 3, 1923.)

1. **Sales** ⬅168(2)—**When right of inspection continues until goods are received and accepted at destination stated.**

Where goods are ordered of a particular quality which the seller undertakes to deliver to a carrier to be forwarded to the buyer at a distant place, the right of inspection, in the absence of a specific provision in the contract, continues until the goods are received and accepted at their ultimate destination.

2. **Sales** ⬅168(2)—**Buyer must inspect at the place where he is bound to accept goods.**

The place of inspection is not necessarily the place where title passes by constructive delivery, but the place where the buyer is finally bound to accept the goods.

3. **Sales** ⬅200(3)—**Title vesting in buyer on delivery to carrier is conditional title, subject to right of inspection on arrival.**

Title vesting in the buyer on delivery to the carrier is at the most, as between the parties, a conditional title, subject to the buyer's right of inspection on arrival at point of destination on noncompliance in quality.

4. **Sales** ⬅85(3)—**Contract of sale "f. o. b. Wichita Falls" held not necessarily to imply "Wichita Falls" was place of delivery or of inspection.**

The agreement between seller and buyer that the contract for the sale was "f. o. b. Wichita Falls" *held* not necessarily to imply that Wichita Falls was the place of delivery or the place of inspection.

5. **Sales** ⬅79—**Goods must be delivered at place of their location at time of sale, if no place of delivery is otherwise named or understood.**

If no place of delivery is named in the contract, goods ordinarily must be delivered at the place where they are at the time of the sale, unless some other place is required by usage of trade or the previous course of dealing, or is to be inferred.

6. **Sales** ⬅85(3)—**Evidence held to show parties understood Vernon was ultimate destination and place of inspection.**

Letters and telegrams between the seller and buyer *held* to show that the parties understood that the town of Vernon was the ultimate destination, and that inspection was to be made at that place.

7. **Sales** ⬅62—**Sale of lumber by carload lot held not divisible.**

A sale of lumber by carload lot *held* not divisible.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by the Industrial Lumber Company against the North Side Lumber & Building Company. Judgment for defendant, and plaintiff appeals. Affirmed.

L. J. Wardlaw and W. H. Lipscomb, both of Fort Worth, for appellant.

Bonner, Bonner & Sanford, of Wichita Falls, for appellee.

KLETT, J. The appellant Industrial Lumber Company, a foreign corporation, claiming its principal office at Elizabeth, La., sued the appellee, a Texas corporation, doing business at Wichita Falls, Tex., alleging that on February 10, 1920, at the special instance and request of defendant, the plaintiff sold and delivered to the defendant three cars of lumber, and that in the shipment was one car

containing 32,906 feet of No. 3 shiplap, of the market value of $1,579.49, for which the defendant had failed and refused to pay. Among various pleas in bar, the defendant replied that, with the plaintiff's knowledge and consent, it assigned the order for the lumber to the Vernon Lumber Company of Vernon, Tex., and that the car in controversy, Penn. No. 42963, was rejected on arrival at Vernon, because part of the material was rotten, and not in accordance with the contract. It appears from the correspondence that on March 10 and 12, 1920, the plaintiff loaded two cars, I. & G. N. No. 5075 and Penn. No. 42963, the point of shipment not being shown, and that on April 3d defendant notified the plaintiff that invoices for these cars were on that day being turned over to the Vernon Lumber Company, which would remit direct for the cars as soon as received and unloaded. On May 24th the appellant acknowledged receipt of the letter of April 3d, and advised that these cars were shipped under dates of March 10th and 12th and were "now past due." The defendant was requested to look into the matter, and see that "settlement is made at once." Plaintiff wrote defendant on June 3d that it had not received settlement from the Vernon Lumber Company, and reminded the defendant that the cars were shipped for account of defendant; the letter also stating the shipments were past due, that they were turned over to the Vernon Lumber Company without plaintiff's authority, and again requested investigation and settlement. On June 11th the plaintiff wrote the Vernon Lumber Company a letter, in which it acknowledged receipt of check covering car No. 5075, less freight from point of shipment to Vernon, but called attention to the fact that the remittance was short, on account of deduction of extra freight charges from Wichita Falls to Vernon. About July 7th car No. 42963 arrived at Wichita Falls, and was diverted by appellees to the Vernon Lumber Company, Vernon, Tex., reaching the latter point July 9th. When the Vernon Lumber Company went to unload the car it was found that a large part of the lumber was unmerchantable and below the specified grade. The Vernon Lumber Company refused to accept the lumber, and thereupon exchanged the following telegraphic communications with the plaintiffs:

"Western Union Telegram.
"Vernon, Texas, 8:40 A. M.  July 9, 1920.
"Industrial Lumber Co., Elizabeth, La.
"Penn four two nine six three just arrived and refused account mostly rotten red board.
"[Signed]  Vernon Lumber Co."

"Western Union Telegram.
"Elizabeth, La., July 9, 1920.
"Vernon Lumber Company, Vernon, Texas.
"Your wire please unload Penn four two nine six three to avoid demurrage are sending official inspector.
"[Signed]  Industrial Lumber Co."

254 S.W.—33

"Western Union Telegram.
"Vernon, Texas, 1:33 P. M., July 10, 1920.
"Industrial Lumber Co., Elizabeth, La.
"Your wire yesterday Cannot use this class of stock could only unload and store for you.
"[Signed]  Vernon Lumber Co."

"Western Union Telegram.
"Elizabeth, La., July 10, 1920.
"Vernon Lumber Co., Vernon, Texas.
"Your wire please unload to avoid demurrage.
"[Signed]  Industrial Lumber Co."

The lumber was not unloaded, and at a later day was sold by the Railroad Company to satisfy its charges for freight and demurrage. There was testimony that from 10 to 35 per cent. of the material was below grade. It also appeared that it was necessary to unload a car in order to inspect the entire contents. On July 19th plaintiff wrote defendant a letter similar to the one of June 3d. On July 31st the plaintiff sent the defendant the following letter:

"Industrial Lumber Co.
"Elizabeth, La., U. S. A., July 31, 1920.
"Northside Lumber & Building Co., Wichita Falls, Texas—Gentlemen: Attention Mr. Cutzler. We attach copy of our telegram of this date, relative to car Penn. 42963, shipped March 12th. You will possibly remember this car was diverted by you to the Vernon Lumber Co., Vernon, Tex. On July 9th the Vernon Lumber Company wired us that the car was refused on account of being mostly rotten red board. We immediately wired them, asking that they unload the car to avoid demurrage, and that we were sending official inspector to grade the stock. They wired on July 10th that they could not use the material, but could only unload and store for us. We then wired them to please unload the car to avoid demurrage. (The following part of this letter was offered by the plaintiff.) We did not receive an acknowledgment to this telegram, but certainly were under the impression that the car had been unloaded. This morning we received telegram from Mr. W. B. Kellett of the F. W. & D. C. Ry., Fort Worth, Tex., advising this car was on hand refused. We requested official inspection this car on July 9th, and inspector should have been at Vernon before now. This car was charged on our books to the Northside Lumber & Building Company, and we, of course, shall look to you for any demurrage charges which might have accrued up to this time. We would also thank you to see that this car is unloaded so as to avoid any further demurrage charges, and also have the material held for inspection. You probably know that according to grading rule No. 3 will permit red heart. We hope to have a wire from you to-day advising you will see that the car is unloaded.
"Yours very truly,
"Industrial Lumber Company,
"Edw. E. Kraus, Sales Manager."

[1, 2] The appellant's principal proposition is that the diversion and reconsignment by the defendant of the car of lumber from Wichita Falls to Vernon constituted an ac-

ceptance thereof. We recognize it to be a general rule that the buyer may manifest an acceptance by dealing with the goods in a manner inconsistent with the intention of rejecting them, as where he sells or uses them in his business. 2 Mechem, 1199, § 1387. But it is also a rule of equal importance that where goods are ordered of a particular quality, which the seller undertakes to deliver to a carrier, to be forwarded to the buyer at a distant place, the right of inspection, in the absence of any specific provision in the contract, continues until the goods are received and accepted at their ultimate destination. 23 R. C. L. 1433, § 256. By this is meant that the place of inspection is not necessarily the place where the title passes by constructive delivery but the place where the buyer is finally bound to accept the goods. 2 Mechem, 1189, § 1377.

[3-5] Even though the title vests in the buyer on delivery to the carrier, it is at most, as between the parties, a conditional title, subject to the right of inspection on arrival at the point of destination on noncompliance in quality. 23 R. C. L. 1433, § 256. If the right of inspection continued until the goods reached destination, it only remains necessary then to ascertain the intention of the parties with respect to the ultimate destination. There is no conclusive evidence that Wichita Falls was the place of delivery. The agreement of the parties that the contract for the sale was "f. o. b. Wichita Falls" does not necessarily imply that Wichita Falls was the place of delivery (35 Cyc. 174) or the place of inspection (Eaton v. Blackburn, 52 Or. 300, 96 Pac. 870, 97 Pac. 539, 20 L. R. A. [N. S.] 53, 132 Am. St. Rep. 705, 16 Ann. Cas. 1198, and notes; 2 Elliott on Contracts, 1162, § 1825; 23 R. C. L. 1433, § 256). Ordinarily, if no place of delivery is named in the contract, the article sold must be delivered at the place where they are at the time of the sale, unless some other place is required by the "usage of trade or the previous course of dealing between the parties, or is to be inferred from the circumstances of the case." Hatch v. Standard Oil Co., 100 U. S. 135, 25 L. Ed. 557.

[6] Not only does it seem from the letters and telegrams that the parties understood that Vernon was the ultimate destination, but it appears with reasonable certainty from all the circumstances that the inspection was to be made at that place. Heidenheimer v. Alexander & Baird (Tex. Civ. App.) 205 S. W. 458. The appellant expressly requested that the lumber be unloaded at Vernon for inspection. It is true the appellant never agreed to release the appellee from liability, but not one time did it oppose the change in destination. Apparently it acquiesced in the reconsignment, and recognized Vernon as the ultimate destination. The act of appellee in forwarding the car was consistent with "the previous course of dealing between the parties." Under the facts stated, the lower court having passed on the issue of intention, we think we are without power to say there is no evidence showing Vernon was understood to be the place of inspection. The conduct of the parties tends strongly to support that construction, and may be looked to in case of doubt to ascertain their intention. On this point it is remarked by Chief Justice Pleasants, in Barnett & Record Co. v. Fall, 62 Tex. Civ. App. 400, 131 S. W. 649:

"We think the language of the contract before set out that the piling was to be furnished by Fall f. o. b. the cars at Texas City, in the light of the facts before stated, should be construed to mean nothing more than that the price of the piling named in the contract should include the freight charges to Texas City. An agreement to sell goods f. o. b. cars at a designated place will ordinarily be regarded as an agreement to deliver the goods at such designated place, but the meaning of the term 'f. o. b.' depends on the connection in which it is used; and, if the meaning of the contract is doubtful, the construction placed upon it by the parties will be adopted. While this contract might be construed as a contract on the part of Fall to deliver the piling at Texas City, this is not its necessary construction, and we think the evidence shows that the parties to the contract treated the piling as the property of appellant as soon as it was received and accepted by the creosoting company, and 'we are warranted in adopting this as the proper construction of the contract."

[7] We do not agree with the appellant's other contention that the contract was divisible. The sale was by the carload lot, and we would be compelled to hold that the sale of a commodity in such quantity was not of the essence of the contract. It is evidence that the appellee was engaged in the business of dealing in lumber in carload lots. Doubtless it was of importance to its trade to handle goods in such units or volume. If the percentage of unmerchantable lumber ran high enough, the expense of assorting and grading might exceed the value of the acceptable material. Clayton Bros. v. Littlefield (Tex. Com. App.) 244 S. W. 509; Pope v. Allis, 115 U. S. 363, 6 Sup. Ct. 69, 29 L. Ed. 397.

We cannot say that the trial court rendered judgment contrary to the law or the facts. The judgment is therefore affirmed.