# Whatley et al., Appellants, *v.* Weston, Dodson & Co., Inc.

*Contract—Sales—Acceptance and use of goods—Waiver of unperformed conditions—Act, May 19, 1915, P. L. 543.*

1. One who receives a commodity, not defective in quality, which he has purchased from another, and appropriates it to his own use, cannot refuse payment therefor because of unperformed conditions of the sale by vendor; such conditions are waived by acceptance and use.

2. In an action for the price of coal sold and delivered, where defendant has acknowledged and admitted in writing the delivery of the coal consigned to its agent, the mere statement by one of its witnesses that there was doubt about the delivery to defendant,

does not raise an issue of doubt as to the arrival of the coal for account of defendant, which must be submitted to the jury.

3. If it appears that defendant not only acknowledged receipt of the coal in question, but sold and delivered it to its customers, the case comes within the very terms of the Sales Act of May 19, 1915, P. L. 543, which provides that "the buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him and he does any act in relation to them which is inconsistent with the ownership of the seller."

Argued February 1, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 64, Jan. T., 1927, by plaintiffs, from judgment of C. P. Northampton Co., Jan. T., 1923, No. 36, on verdict for defendant, in case of F. C. Whatley et al., trading as the Steel City Gas Coal Co. v. Weston, Dodson & Co., Inc. Reversed.

Assumpsit for coal sold and delivered. Before MC-KEEN, J.

Verdict and judgment for defendant. Plaintiffs appealed.

*Error assigned* was, inter alia, refusal of judgment for plaintiffs n. o. v., quoting record.

*W. H. Kirkpatrick,* of *Kirkpatrick & Maxwell,* for appellant.—There being no disputed fact to submit to the jury, a directed verdict was necessary.

Every element of a sale, delivery, and acceptance was proved by undisputed testimony.

Defendant by its subsequent conduct, with full knowledge of the facts, waived any default on the part of plaintiff, even if the breach were material: Wilbur v. Lamborn, 276 Pa. 479; Wright v. Carbonic Co., 271 Pa. 332; Bascom v. Stove Co., 271 Pa. 332; Sternbergh v. Iron Co., 156 Pa. 34; Tete Bros. v. Eshler, 11 Pa. Superior Ct. 224.

*Asher Seip,* with him *Adams Dodson,* for appellee.—
If plaintiffs seek to escape the performance of the terms
of the order to report the car numbers and weights to
defendant within the time specified, and at the same
time accept Tidewater as the agent of defendant to
whom to ship the coal for acceptance on behalf of de-
fendant, and thereby charge the principal with the acts
of the agent, the burden is on plaintiffs to prove that the
agency and its extent and scope embraced the right to
waive the terms of the order, unperformed by plaintiffs;
and if unperformed by plaintiffs, that the scope of the
agency extended to the return or offer to return to plain-
tiffs the coal in question: Humbert v. Meyers, 279 Pa.
171, 176.

When a third person knowingly deals with an agent
in excess of the agent's authority, the principal must
have full knowledge, actual or constructive, in order to
ratify the unauthorized act of the agent: Republic Bank
Note Co. v. R. R., 65 Pa. Superior Ct. 72.

A punctual compliance with the express terms of the
written contract or order was necessary for the follow-
ing reasons; first, the great fluctuation of the price of
coal at this time; second, the unauthorized shipments to
Tidewater for the accounts of its members; third, the
fact of shipment, if made, was peculiarly within the
knowledge of plaintiffs; fourth, notice was expressly
provided for in the contract.

Title to the eighteen cars of coal passed to Frame,
Friend & Stineman, Inc., upon shipment from the
mines: P. & R. R. R. v. Weirman, 88 Pa. 264; Schumacher
v. Eby, 24 Pa. 521; Bacharach v. Freight Line, 133 Pa.
414; Dannemiller v. Kirkpatrick, 201 Pa. 218.

OPINION BY MR. JUSTICE SCHAFFER, March 14, 1927:
This action was brought to recover the purchase price
of eighteen cars of coal. The trial resulted in a verdict
and judgment for defendant, from which plaintiffs ap-
peal, contending that under the evidence judgment

should have been entered in their favor for the full amount of their claim.

Defendant gave a written order to plaintiffs on October 12, 1920, for sixty cars of coal. The order stipulated that it was to be shipped to Tidewater Coal Exchange, Incorporated, "Pool 34," at the Curtis Bay Coal Piers, Baltimore, for the account of defendant under a permit held by it. The price named was $10.75 per ton. The order provided that plaintiffs should "Report all car numbers to us [defendant] at Bethlehem the day cars are shipped. Follow with weights immediately after coal passes scales."

The Tidewater Coal Exchange was a corporation composed of certain dealers in coal, defendant being one of them, whose purpose was to aid and facilitate the handling and shipment of coal at tidewater. Its physical entity consisted of a large number of railroad tracks on which the cars were run and where they remained until the coal was loaded into vessels. When the coal reached the Exchange it was inspected and if it passed inspection was loaded directly into boats from the cars or was placed on the tracks devoted to coal of similar grade. When coal was accepted by the Exchange its identity was lost in the mass of other coal of like kind. The coal in question, owing to its grade, was to go into pool 34, to which defendant's written order directed shipment. There is no denial that the coal was shipped to and accepted by the Tidewater Exchange. Six cars thereof were shown to have been loaded directly into a named boat in which defendant was shipping coal, and the rest was mingled with the other coal of similar kind in the Exchange for defendant's account. The Exchange did not handle or receive any money for the coal which passed through it. It credited to each consignee the coal received consigned to him and charged him with the coal which went out of its hands to fill his commitments. Under certain conditions members of the Exchange were permitted to take more coal out of the mass in the Ex-

change than was to their credit, being charged with the
overdraft which they made up by subsequent shipments
into the Exchange.   Shortly after the receipt of the
eighteen cars of coal in question defendant overdrew its
credit in the Exchange several thousand tons.   This es-
tablishes the fact, an important one in the case, that all
the coal in question was sold by defendant and shipped
to its customers.

With this general view of the situation outlined, we
will now take up in detail the circumstances disclosed
by the testimony which to our minds convincingly show
that defendant should pay for the coal, that its defenses
against payment are justly unavailing and that the trial
judge was in error in not directing a verdict in plain-
tiffs' favor.

First there is the circumstance that defendant's writ-
ten order directed plaintiffs to ship the coal to the Tide-
water Exchange for its account.   This constituted the
Exchange defendant's agent to receive it.   The coal ar-
rived at the Exchange on October 17th and 18th and the
Exchange notified defendant of arrival and that the cars
had been "dumped" for its account.   Defendant was
also informed that it had been credited on the books of
the Exchange with the tonnage contained in the eighteen
cars.   The Exchange reported the car numbers but not
the name of the consignor as it did not know who was
the consignor.   These notices from the Exchange were
received by defendant on October 25th, 26th and 27th.

Plaintiffs did not comply with the requirements of de-
fendant's order to "Report all car numbers to us at Beth-
lehem the day cars are shipped."   This report was not
made until November 18th.   In connection with it plain-
tiffs stated that according to their records the eighteen
cars had gone forward to Frame, Friend & Stineman,
but the latter had advised them that the Tidewater Ex-
change showed that the cars had arrived there for de-
fendant's account.   Upon receipt of plaintiffs' communi-
cation of November 18th giving the car numbers, defend-

ant wired plaintiffs acknowledging that the cars had arrived for its account without being reported as the order required, saying further, "We will accept your invoice at nine dollars ninety-seven cents per ton, our average price," and on November 24th by letter defendant formally acknowledged receipt of plaintiffs' letter of November 18th "relative to cars shipped to Frame, Friend & Stineman, but arrived for our account at Curtis Bay. As wired you yesterday, these cars arrived without having been reported and we will agree to accept your invoice at $9.97 per net ton, which is our average cost price on coal of similar quality on date shipped." This proposition was accepted by plaintiffs on January 25, 1921. The price of coal was declining and on January 28th defendant replied refusing to stand to its offer but making a proposition to pay $5 per ton. This offer was repeated on February 12th. On December 22, 1921, and December 28, 1921, defendant acknowledged that the eighteen cars of coal had arrived at the Tidewater Exchange consigned to it and "dumped for our account." From the foregoing it will be seen that defendant does not deny, indeed it admits, that the coal in compliance with its order was shipped to the Tidewater Exchange and received by the latter for its account and the proofs established that the coal passed from the Exchange to customers of defendant to whom it had been sold by the latter. So far as the six cars are concerned which were dumped directly into the vessel, defendant admits the actual receipt of the money for the coal which they contained.

We will now proceed to examine defendant's claim of nonliability. The coal was originally sold and shipped to Frame, Friend & Stineman, consigned for their account to the Tidewater Exchange. For some reason not made entirely clear but apparently because it was believed by plaintiffs that the coal could not go forward to Frame, Friend & Stineman on their permit, plaintiffs, while the coal was in transit, changed the order for

its shipment and directed it to be consigned to defendant. As a result of conflicting instructions and misunderstandings among plaintiffs or their office force it was believed for some time that the coal had gone to Frame, Friend & Stineman. Even after defendant's acknowledgement of receipt of the coal and plaintiffs' notice to it of November 18th and defendant's proposition to pay for it at a lower figure, this mistaken conclusion continued to exist to such an extent indeed that plaintiffs brought suit against Frame, Friend & Stineman to recover the price of the coal. On being satisfied, however, that defendant and not the original consignees had received the coal, plaintiffs discontinued the suit.

Defendant contends that, after consigning the coal to Frame, Friend & Stineman, plaintiffs could not reassert dominion over it, take title out of them and reconsign it to the Tidewater Exchange for defendant's account. This might be so if Frame, Friend & Stineman were claiming the coal, but they are not and defendant undoubtedly received and sold it; under this state of facts, when called upon to pay, it does not lie with defendant to raise this question.

Defendant argues that plaintiffs cannot recover because they did not comply with the terms of the written order by reporting the car numbers to it the day the cars were shipped and by following this with the weights after the coal had passed the scales. Defendant was precluded from setting up these derelictions of plaintiffs against their demand for payment when it assented to its agent's act in accepting the coal and thereafter exercised ownership by selling it. One who receives a commodity, not defective in quality, which he has purchased from another, and appropriates it to his own uses, cannot refuse payment therefor because of unperformed conditions of the sale by the vendor; such conditions are waived by acceptance and use. Defendant, by its letter of November 18th, in which it offered to pay for the coal at a reduced price, waived the conditions mentioned and

recognized its liability.  Defendant alleges that owing to plaintiffs' failure to give notice, not knowing from whom the coal had come, it was compelled to and did purchase eighteen other cars of coal at $11 per ton or twenty-five cents above the sale price of the coal in question in order to meet its commitments to customers.  It does not set up this difference in price by way of counterclaim, does not divulge the price at which it sold this coal nor allege any loss on its sale.  Defendant needed this tonnage and more to meet the overdraft in the Exchange.  It is difficult to see how this transaction even if ascribable to plaintiffs' default, which is not altogether apparent, was to defendant's disadvantage.

Defendant makes point of the circumstance that one of its witnesses testified there was doubt about the fact that the coal in question arrived at the Tidewater Exchange *"consigned to our company."*  In his opinion on the motion for judgment the trial judge said that "This testimony raised the dispute about the arrival of the coal for the account of defendant and was consequently a question for the jury."  This is a palpably mistaken view of the actualities of the case.  There can be no doubt, because defendant admits it, that the coal was received by its agent, the Exchange, in its behalf, and that defendant used the coal.  If there was a doubt as to whom it was *consigned,* which we think there was not (otherwise, how could the Exchange have notified defendant of the arrival), that doubt was of no consequence in the determination of the issue in the light of what actually happened to the coal.  Defendant in writing expressly admitted that the coal arrived consigned to it; "arrived for our account at Curtis Bay," "subsequently arriving under our permit, *consigned to us* and dumped for our account."  In view of these admissions how can it be said that there was doubt on the matter or that any such question was open for the jury's determination?  Slightly paraphrased, the language used in Wilbur v. Lamborn, 276 Pa. 479, fits the situation with

which we are now dealing: "The subject-matter of this contract is the sale of [coal]. That is the material thing in it, and that part of the contract which provides [for certain notices] ...... is an incident of that sale and delivery, and unless somebody was harmed [by the failure to give notices] that part ought to give way to the common intent of the contract, which is the sale of [coal] and its delivery."

We think under the very terms of the Sales Act (Act May 19, 1915, P. L. 543, section 48) the defendant is bound to pay. "The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him and he does any act in relation to them [here defendant sold and delivered the coal to its customers] which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time he retains the goods without intimating to the seller that he has rejected them."

Our conclusion is that plaintiffs under all the evidence were entitled to an affirmance of their point for binding instructions in their favor.

The judgment is reversed and the court below is directed to enter judgment for plaintiffs for the amount of their claim with interest.