ROTARY SHIRT CO., INC., Respondent, *v.* SAMUEL MELTZER, Appellant.

First Department, May 27, 1921.

Sales — action to recover purchase price of goods delivered — defense that goods were rejected as not in accordance with sample — question for jury whether goods accepted or rejected within reasonable time.

In an action to recover the purchase price of silk which the plaintiff sold and delivered to the defendant, in which the defense interposed was that the goods were rejected because they were not according to sample, evidence examined and *held*, that it was error for the court to direct a verdict in favor of the plaintiff; the case should have been submitted to the jury to determine whether the defendant accepted the goods or whether he rejected them within a reasonable time.

APPEAL by the defendant, Samuel Meltzer, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 5th day of November, 1920, upon the verdict of a jury rendered by direction of the court after a trial at the New York Trial Term.

*Maurice J. Katz* of counsel [*Katz & Levy*, attorneys], for the appellant.

*Louis H. Levin* of counsel [*Steinberg & Levin*, attorneys], for the respondent.

GREENBAUM, J.:

The action was brought to recover the purchase price of twenty-seven pieces of silk goods, pursuant to an oral contract made sometime in January, 1920. It is undisputed that the goods were duly delivered by the plaintiff to the defendant; that they were not accepted by the defendant upon the alleged ground that they were not in accordance with the samples upon which the sale was made; that it was thereupon agreed between the parties that the defendant retain six of the pieces which were satisfactory to him and that in lieu of the rejected twenty-one pieces he would accept twenty-one

pieces of " first quality " silk corresponding to a sample, which differed from the goods originally purchased, and for which he would pay an increased price, to wit, three dollars per yard instead of two dollars and seventy-five cents. This superseding contract was entered into in the latter part of January. Subsequently the plaintiff delivered twenty-one pieces of silk. The parties differ as to the date of delivery. Defendant positively states that they were delivered on March tenth or eleventh. The invoice or bill for this shipment is dated March eleventh.

On the other hand, the defendant signed a receipt for the goods dated February twentieth. The plaintiff's president, a Mr. Liberman, however, admitted that it was the practice in his business to make out receipts some days in advance of the actual delivery and that he did not know when they were in fact delivered.

Defendant testified that on March fifteenth he telephoned to Mr. Liberman and informed him that he had examined the goods and found that they were not " first quality " as agreed upon, but " seconds " and contained many misweaves and that he could not use them and that Liberman thereupon said: " ' What do you intend to do with those goods if they are seconds? ' I said, ' You know well enough I cannot use them; I am going to send them back,' " and that thereupon Liberman stated: " I will come down to see you."

Liberman denied that any such conversation took place.

On April eighth defendant wrote to plaintiff to have a " representative call to see our Mr. Meltzer in reference to the silks we bought from you," to which the plaintiff replied under date of April tenth: " Would kindly ask you to let us know by mail for what reason you desire to see our representative. We tried to get you on the wire yesterday, but you were not in. We left word for you to call us and have not heard from you yet." To this letter defendant wrote a reply under date of April twelfth: " We are in receipt of your letter of April tenth and cannot understand why it is so hard for your representative to come to see us without knowing the reason why. We wish to see him in reference to the goods we bought from you, and when he comes we will give him all the explanations."

It is contended in behalf of the plaintiff that the foregoing communications of the defendant making no mention of the fact that the goods were not in accordance with the sample, conclusively established that no conversation over the telephone such as testified to by the defendant ever took place.

It is, however, admitted that on the fourteenth or fifteenth of April Liberman called at defendant's place of business and had a conversation with the latter. Plaintiff's version of that interview is as follows: " I said to Mr. Meltzer, I says: ' What did you want to see me about? You wrote two letters to me that you want to see me.' He also called me up that he wants to see me. So when I got there, I said: ' What do you wish to see me about? ' He said: ' I will tell you, Liberman, I am stuck with the goods that I bought from you.' He says: ' We make overalls and working shirts only, we have never made silk shirts since we are in business,' or, ' we haven't made any,' or something like that, and he said, ' and we don't know how to make silk shirts,' and to prove to me that he don't know how to make them, he had a few pieces which he has bought from us, goods of a different character; these were 32 inches in question and the ones he had from us was 40 inch goods, he had it made up and they were made up terrible. He said: ' Not only will I lose my money on the goods, but,' he said, ' it will also cost me the making and expense.' He says: ' Can you help me out and have those silks to be made up into shirts and make the shirts for me? ' I looked at his make and saw that he don't know how to make the silk shirts. I said: ' I should be very glad to do that, Mr. Meltzer,' I says, ' and furthermore, I don't want any profit on the making of the shirt.' I says, ' Whatever the extra cost for pattern, making, buttons and trimmings which I believe will amount to between eleven or twelve dollars a dozen,' I says, ' that is all I will charge you for it and I will send the shirts back to you as soon as I get a chance to make them for you.' "

Defendant's version of the conversation is that he complained that the goods " run misweaved; " that he showed the goods to Liberman who said: " ' That is the way they got to run.' I said, ' Well, they may run that way while you buy goods, but when I bought them, I bought them as firsts

and my cutter claims that he cannot cut them that the shirt should be perfect, because sometimes the pattern is put on where the misweaving or hole is and it will be not perfect shirts;'" that thereupon Liberman said "'Tell your cutter that he don't know your business; he don't know how to cut them.' I said, 'Do you know how to cut them better?' He said, ' Certainly, we are making these goods and we never have any seconds; may be one shirt out of a hundred comes out a second, you can avoid those misweaves and those mis-threads by cutting it.' I said: ' If you are a wonder, do it for me and give me perfect shirts.' He says, ' Certainly, I will do it for you with pleasure.' He says: ' I will make them up for you; I am going to give you shirts that will be perfect.' I said, ' If that is the case, I will give you the goods to make them up for me, but *I will not keep the goods unless you give me shirts that shall come out perfect.*' [Italics ours.] He says: ' All right, I will let you know when you can send over the goods and I will make up shirts for you.' "

On April fourteenth defendant wrote a letter to the plaintiff confirming the conversation as to manufacturing the shirts for him. Plaintiff replied to this letter under date of April sixteenth also confirming the arrangement, but adding: " We will notify you within due time when we will be in a position to make these for you, and at that time you may send in the goods, but at present we are quite busy, and we will not be in a position to undertake to make them for you, however, we may suggest to you to get in touch with the Shirtcraft Co., 718 Broadway, city, who we believe are in a better position to make them for you, and they probably will make them for a little less than we can. We recommend them very highly to you as reliable and honest good shirtmakers."

On April nineteenth defendant wrote to plaintiff: " When you were up in our place, you faithfully promised to make up for us shirts from the silk we bought from you. We also explained to you that we have no use for this material otherwise. We would like to send these goods over to you, and, therefore, would like to get an acknowledgment that we should ship these goods to you," to which plaintiff answered under date of April twenty-second:

" My DEAR Mr. MELTZER:

" I have received your letter of April 19th, and I again repeat that I will be only too glad to make those shirts for you, of the materials you mentioned to me, but at the present time we are cutting 36 inch and 40 inch goods, and as soon as we will make a 32 inch cut I shall let you know, and at that time make up the shirts for you as stated in our previous letter. With kind regards, I am,

" Yours very truly,

" MEYER LIBERMAN."

It thus appears that although the parties differ as to what was said respecting the reason why the goods were to be returned to plaintiff to be manufactured into perfect shirts, as matter of fact, it was agreed between them that the plaintiff would manufacture the shirts and would notify the defendant when it would be prepared to receive the goods.

Defendant further testified that in addition to writing, he also telephoned to Liberman about sending the goods, but that he heard nothing about the matter until the twenty-seventh day of May when a representative of plaintiff came to his office and asked him for a check for the goods; that he told him that he would not pay for the goods until the shirts were made up as agreed, and that he then showed this representative misweaves in the goods and that he thereupon returned the goods to the plaintiff.

Defendant produced a witness by the name of Montgomery, who was an examiner of dry goods with an experience of forty years, and who was called to testify as to the quality and grade of the silk in dispute. This witness was not permitted to testify upon the ground that the evidence established that there had been an acceptance of the goods by the defendant. Defendant duly excepted to the court's ruling. Thereafter the court directed the jury to find a verdict in favor of the plaintiff in the sum of $6,006.20.

It seems to us that the testimony in the case clearly indicates marked differences between the parties as to whether the defendant had accepted the goods or whether they had been rejected within a reasonable time and that the case should have been submitted to the jury to determine: (1) As to

when the twenty-one pieces of silk were delivered to defendant. (2) Whether the defendant notified the plaintiff within four or five days after the goods were delivered that they were not in accordance with sample.   (3) As to what the conversation between the parties, admittedly held on April fourteenth, was and whether the admitted agreement on the part of the plaintiff to manufacture shirts for the defendant from the goods in question was based upon defendant's claim that the goods were not in accordance with sample or whether it was entered into because of defendant's claim that he was not familiar with the manufacture of silk shirts.   (4) Whether or not the goods delivered were in accordance with the sample agreed upon.   (5) Whether the defendant was justified in returning the goods when he did and whether the defendant's rejection of the silk was made within a reasonable time.

In our opinion the learned trial court erred in excluding the testimony of Montgomery and in directing a verdict.   The judgment and order appealed from are reversed, with costs to appellant to abide the event, and a new trial is ordered.

CLARKE, P. J., DOWLING, PAGE and MERRELL, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide event.