Perryman Burns Coal Co., Inc., Plaintiff, *v.* Northwestern Fire and Marine Insurance Company, Defendant.

Supreme Court, New York County, June 9, 1927.

**Insurance — marine insurance — action by insured to recover loss occasioned by sinking of coal barge at point of delivery — delivery having been made plaintiff's insurable interest terminated — loss was caused by unseaworthiness, overloading and failure to have competent watchman on board.**

This is an action on a blanket or floating policy of marine insurance issued by the defendant to insure the plaintiff against loss sustained by perils of the sea and it covered all shipments on barges of coal consigned to the plaintiff or to others for plaintiff's account in which plaintiff might have an insurable interest.    The loss claimed is for a cargo of coal consigned to a third person for delivery at a specified pier.    The coal was loaded into the buyer's boat at the pier and after the boat had reached the buyer's coal yard it sank.    As soon as the coal was delivered to the buyer's boat title passed to the buyer and the plaintiff, the seller, had no further insurable interest therein.

Furthermore, the evidence shows that the loss was caused by the unseaworthiness of the boat, overloading and failure to have a competent watchman on board, causes exempted from the coverage of the policy.

Action on policy of insurance which insured plaintiff against loss from perils of the sea.

*Pickett & Pickett,* for the plaintiff.

*W. F. Purdy,* for the defendant.

Walsh, J.  This action is on a policy of insurance issued to plaintiff by defendant.  The policy was a blanket or floating policy. It insured plaintiff against loss sustained by perils of the sea and covered all shipments on barge or barges of coal consigned to plaintiff or to others for plaintiff's account and in which it may have an insurable interest.  Excepted from coverage were losses arising (a) from want of ordinary care and skill in navigating said lighters; (b) from any neglect in not keeping the lighters well pumped out, except in cases of accident; (c) in consequence of carelessness in loading or by reason of the lighter being unduly laden.  The policy also provided that said lighter or vessel, when loaded, shall at all times have a competent watchman on board; and under the policy provisions the duty rested upon the assured to report to defendant each and every shipment as soon as it had knowledge thereof, but in no case to exceed seventy-two hours.

Plaintiff sold to Nelson Bros. Coal Company approximately 400 gross tons of coal to be consigned to Undercliff coal piers, Undercliff, N. J., via Erie railroad, which coal was to be insured by plaintiff at the buyer's expense.  The coal was to be loaded at the above piers into the buyer's boat *Harlem.*  The coal, in quantity about 488 tons, was delivered by plaintiff to the Undercliff piers and was then placed aboard the barge *Harlem.*  It was transported in the barge *Harlem* to the buyer's coal yard in Gowanus canal, Brooklyn, arriving at the canal during the afternoon of November twenty-second.  She then lay a short distance from the buyer's coal yard, pulling up to the yard on the evening of November twenty-fifth. At that time she was leaking.  The captain pumped her out at five o'clock, and thereafter went home for about two hours, leaving her unattended during that time.  On his return he pumped her out again.  At about two o'clock in the morning of November twenty-sixth he heard water running into the boat, and going on deck found that she had settled in the water at her stern and that the water was coming into the boat.  She later settled upon the bottom. Thereafter, and on November twenty-sixth, at about noon, plaintiff submitted to defendant a report of the loading and shipment, upon which the defendant, by its agent, indorsed, " Warranted policy conditions as to loading and reporting complied with."

Defendant disclaims liability on the following grounds: (1) That plaintiff had no insurable interest in the coal; (2) that report of the

shipment was not made in compliance with the policy requirements; (3) that the loss was not occasioned by a peril of the sea; (4) that the barge was overladen; (5) that the vessel did not have a competent watchman on board at all times.

Under the contract, delivery of the coal was to be made at the Undercliff piers. It was so made, being there loaded on the barge of the buyer and consigned to it. When so delivered, title passed to the buyer. Under the law the place of delivery is the place for inspection, and the duty rested upon the buyer, if it desired to inspect the coal before acceptance, to examine the same before it was laden on the barge. After delivery the seller had no further interest in or duty with respect to the coal. It would neither benefit by its preservation nor be prejudiced by its loss. It had no insurable interest therein.

Plaintiff claims, however, that it was under a contractual obligation to insure the coal and that this gave it an insurable interest in the coal. Under the contract between the parties, the obligation was on the buyer to pay to plaintiff seller the insurance and freight on the coal; but this was clearly to the time and place of delivery to it and not thereafter. The evidence established that plaintiff knew of the shipment on November twenty-second, but did not report same to the defendant until about noon on November twenty-sixth. The clause covering notice here applicable is the one contained in the rider, which provides that " the assured agree to report to this company each and every shipment as soon as they have knowledge thereof, but in no case exceeding 72 hours."

Notice was not given to the defendant within this time limitation. It appears, however, that when the report was given to defendant it declined to receive the same until plaintiff warranted that conditions with respect to loading and reporting had been complied with, whereupon plaintiff made such warranty, and defendant's agent thereupon accepted the notice of shipment, indorsing thereon, " Warranted policy conditions as to loading and reporting complied with." It is evident that this indorsement is merely a notice of the representations made by plaintiff as to the timeliness of the notice, and that it can by no means be held to be a waiver by defendant of the necessity of compliance by plaintiff with the policy requirements.

The remaining questions relate to whether the loss was occasioned by causes exempted from the coverage of the policy. The testimony established that the barge in which the coal was conveyed was twenty-nine years old. Her proper load when new was shown not to exceed 450 tons. She apparently had never carried more than 450 tons, her loads usually being from 400 to 450 tons. On her arrival at the pier in Gowanus canal she was leaking. The captain

testified he pumped her out and then went home to get his supper, being gone about two hours. On his return he noticed she had taken in more water. At about two o'clock the following morning he heard water running into the boat, and found that she had settled in the water at her stern and that water was coming into her very fast. She gradually settled upon the bottom. There was no unusual weather nor extraordinary tidal conditions. It was contended by plaintiff that the barge grounded prior to the sinking, and that this caused her to subsequently sink, but the evidence did not establish such fact.

From the foregoing it seems evident, and I so find, that the sinking of the vessel was due to her unseaworthy condition, and also by reason of the fact that she was overladen, which overloading strained her seams and caused her to leak and thereafter sink; also that the insured did not, as required, have a competent watchman on board at all times.

Verdict directed for defendant dismissing the complaint. Proposed findings passed upon. Submit decision accordingly.