(No. 6613.  February 2, 1940.)

THIESSEN LAND COMPANY, a Corporation, Respondent, v. METZ LIVESTOCK COMPANY, INC., a Corporation, Appellant.

[99 Pac. (2d) 50.]

162

162

162 Chapman & Chapman and Lionel T. Campbell, for Appellant.

Bothwell & Povey and Cox, Ware & Stellmon, for Respondent.

AILSHIE, C. J.—March 21, 1936, respondent Thiessen Land Company purchased from appellant Metz Livestock Company of Twin Falls a Belgian stallion for $1,500. When the sale and delivery was made, appellant gave respondent a bill of sale and a contract of guarantee. This action was prosecuted for damages for breach of Paragraph 3 of the guarantee, which reads as follows:

"(3) In the event that the above named Stallion in perfect health with proper care and usage, and to the mares to him

regularly returned, and tried or bred, on one full service season's trial does not get with foal fifty per cent of the mares regularly tried and bred to him, then on return of the said Stallion to said Metz Livestock Co., Inc., at Twin Falls, Ida., during the first week in the month of April next following the said full service season first concluded after the date hereof, in sound and as good condition as said Stallion is at present, said Metz Livestock Co. agree to furnish the above named purchaser without further charge, another imported or pure bred stallion of equal quality in exchange for said Stallion so returned.''

The case was tried to the court and a jury and a verdict was returned in favor of the respondent, from which this appeal has been prosecuted.

Some thirty errors have been assigned, but appellant combines the questions raised into a single proposition which is stated in the brief as follows:

''Since the only question presented by this appeal relates to errors of the trial Court in admitting or rejecting evidence, in giving or refusing to give instructions, and in denying appellant's motions for nonsuit and directed verdict, all bearing upon the construction of the contract, plaintiff's Exhibit A, we have submitted but one proposition of law, and this argument will be directed to the one question.''

It is not denied that the horse failed to come up to the terms of the guarantee above set out. Out of some fifty mares served, only two foaled.

The real contention here presented and urged by appellant is that the respondent itself failed to comply with the requirements of the guarantee, in that it failed to return the horse ''during the first week in the month of April next following'' to the appellant company at Twin Falls, Idaho. It is admitted by respondent that it did not return the animal to Twin Falls; but respondent contends that the conduct of appellant, in refusing to furnish another animal in lieu thereof and in refusing to take the stallion back and replace him with ''another imported or pure bred Stallion of equal quality,'' rendered it unnecessary for respondent to return the animal and excused it from so doing.

The court properly instructed the jury as to the law in relation to such a guarantee and the respective duties of the vendor and purchaser, with reference to the return on the part of the purchaser and the duty of the vendor to replace the animal with another "of equal quality"; and the duty of finding the ultimate fact from the proofs submitted was purely a matter for the jury.

During the period covered by this guarantee, Metz, general manager of appellant company, was at respondent's place, saw the animal, and discussed the conditions as they then existed with the Thiessen Brothers, who were the principal owners of the Thiessen Land Company. He also took Albert and William Thiessen in his car from Pendleton to Twin Falls in March, 1937, where they discussed this matter, apparently at considerable length, although the record is meager in its disclosure as to just what was said between the parties. It seems clear, however, from what the record does disclose, that sufficient facts were submitted to the jury to justify them (if they believed it as they evidently did), in the conclusion that appellant refused to furnish respondent with another animal of equal quality unless respondent would pay appellant a substantial sum for making the exchange. Some of the evidence on this point is as follows:

Metz testified:

"A. Well, they figured they wanted to exchange the horse and get another horse. . . . .

"A. He [Albert Thiessen] and another brother came to Twin Falls in my car. . . . .

"A. The date, I think it was around the 17th of March if I remember right. . . . .

"Q. You had at that time about 15 or 20 stallions there?

"A. Yes, sir. . . . .

"Q. What was said about exchanging the roan stallion that the Thiessen's had for this three-year old?

"A. I told them I would take so much difference on each one of these stallions.

"Q. What do you mean by that?

"A. They would pay me so much money and I would take their horse back. . . . .

"Q. The proposition you made to them: You would take this roan Belgian stallion back?

"A. Yes, sir.

"Q. And give them one of these three at a certain figure, if they would pay you so much money?

"A. That's right. . . . .

"Q. That is the offer you made to them?

"A. Yes, sir."

Albert Thiessen testified to a conversation which took place at Twin Falls as follows:

"Q. Was anything said at that time about returning this horse to him?

"A. Yes.

"Q. What was said, Mr. Thiessen?

"A. Well, we wanted him to take this horse back and give us one that would get the mares with foal.

"Q. What did Mr. Metz say about taking the horse back?

"A. He would take the horse back all right for some other horses there, but he wanted a thousand dollars for one, and the other one $500 difference in price, and turning our horse in.

"Q. (By Judge Bothwell): Did he give you another horse free of charge, Mr. Thiessen?

"A. No. . . . .

"Q. And you say that there were two horses that you were interested in but that Mr. Metz wanted a thousand dollars for one and $500, difference, for the other?

"A. Yes.

"Q. And didn't you and your brother tell Mr. Metz that you would go home and talk it over with the other persons interested with you and that you would let him know what you would do?

"A. No.

"Q. (By Mr. Orr Chapman): You didn't tell him that?

"A. No.

"Q. *Well, what did you tell him?*

"A. *I told him we was going to start suit if he didn't give us another horse.*

"Q. *You told him that here at Twin Falls?*

"A. *Yes.*

"Q. And that was in March or December?

"A. March.

"Q. *You told him you were going to bring suit unless he gave you another horse; and what did he say to you?*

"A. *He said he couldn't do nothing and walked away, and that was the last of it.*

"Q. Where did that happen?

"A. Here, in front of the barn.

"Q. Then you went back to Lewiston?

"A. Yes.

"Q. You didn't communicate any with Mr. Metz after you got home; that is, you didn't write him any letter?

"A. No.

"Q. You didn't call him up, didn't send him any telegrams?

"A. No.

"Q. Well, to what use did you put this horse after June 15, 1936 and for the rest of that year—did you do anything with him, use him in any way?

"A. No.

"Q. Did you use him in any way in 1937?

"A. No. . . . .

"Q. You say you didn't bring the stallion here to Twin Falls?

"A. No.

"Q. *Did you offer to bring him here to Twin Falls?*

"A. *Yes, sir.*

"Q. (By Judge Bothwell) : What was said by you to Mr. Metz if anything about bringing the stallion here to Twin Falls?

"A. What was the question?

"Q. (Repeated by reporter.)

"A. We told him we would bring him down if there was any agreement made.

"Q. You told *you* you would bring him down?

"A. Yes."

Some stress has been laid on the fact that the stallion was injured about June 14, 1936. This happened after the service of all these fifty mares had been made, and of course could not have had any effect in any way on the sterility of

the horse as to any services previously made by him. The proofs are also clear and undisputed that the accident or injury to the horse, which occurred June 14th, was not serious and in no respect injured or impaired him for breeding purposes thereafter, except for the short time he was kept up for treatment.

We find no prejudicial error in the record and the jury has passed on the evidence which is sufficient to justify their verdict.

Judgment affirmed with costs to respondent.

Givens, Morgan and Holden, JJ., concur.