(No. 7049. February 26, 1943.)

W. E. BAKER, Respondent, v. J. C. WATSON CO., a corporation, Appellant.

[134 Pac. (2d) 613.]

Rehearing denied March 22, 1943.

Geo. H. van de Steeg for appellant.

Geo. Donart and Dunlap & Dunlap for respondent.

GIVENS, J.—August 25, 1941, respondent, fruit grower at Home, Oregon, sold appellant, of Parma, Idaho, five carloads of peaches at an agreed price. Pursuant to the contract, the peaches were delivered to appellant f.o.b. cars at Home, Oregon, and billed to Laramie, Wyoming. Upon receipt of the bills of lading at appellant's place of business at Parma, Idaho, checks aggregating the contract price of $6053.25 were sent in payment thereof. In transit the cars were diverted by appellant from Laramie to LaMantia Bros. Arrigo Co., at Chicago. Upon their arrival there, appellant, contending they did not conform to the grade of peaches allegedly purchased, namely, U. S. No. 1, rescinded the contract, notified respondent thereof, and asked for instructions as to the disposition of the peaches as perishable. Respondents refused to accept rescission and dis-

claimed further responsibility; whereupon appellant sold the peaches to respondent's account and, after deducting expenses and freight, sent the proceeds ($3964.91) to respondent, who refused acceptance. This suit was instituted by respondent to enforce the full purchase price. By the answer appellant urged rescission and tendered the amount of the proceeds into court. Respondent introduced no affirmative evidence challenging appellant's defense of breach of warranty and rescission and secured in his favor an instructed verdict—hence this appeal.

Respondent's complaint contained no statement as to the grade or quality of the peaches. Appellant in its answer alleged as to the said contract of sale "that it was understood and agreed that said peaches were to grade as U. S. No. ones", and that upon their arrival in Chicago they were "found to fail to grade U. S. No. one on account of Curculio injury, split pits and misshapen stock," which defects, according to the evidence, existed in the peaches at the time of their shipment and were not incurred during transit; further, that at that time appellant notified respondent "that the defendant [appellant]could not accept the peaches on account the plaintiff failed to deliver U. S. No. ones as agreed"; and, again, "the plaintiff [respondent] failed, neglected and refused to deliver to the plaintiff f.o.b. the cars at Home, Oregon, or at all, the five cars of peaches of U. S. No. 1 quality or grade agreed to be purchased by the defendant [appellant] from the plaintiff."

Appellant in its brief states:

"The evidence all tended to establish the facts alleged in the said pleadings, and there is very little conflict, in the evidence except as to the one question, namely, whether or not the parties understood and agreed that the contract covered upon U. S. No. 1 peaches, and whether or not defendant resold the peaches to LaMantia Bros. Arrigo Co."

"(c) The evidence shows that the plaintiff failed to fully perform his agreement in that he failed to deliver U. S. No. 1 peaches as agreed and promised; that to load and ship U. S. No. 1 peaches was a primary obligation resting upon the plaintiff and the essence of the whole transaction * * *."

"(f) That the peaches did not grade U. S. No. 1's on account of curculio injury, split pits, etc., defects which occur in growth upon the trees and would be readily apparent in packing."

"If the contract was for the delivery of U. S. No. 1 peaches, and the seller failed to deliver that grade or quality of peaches, there certainly was a breach of promise on his part, and the defendant, as the buyer, even after acceptance, still had the remedy of damages or other legal remedy for such breach."

Respondent in his brief states:

"Its [appellant's] entire defense was predicated upon the contention that when the peaches were purchased there was an agreement amounting to a warranty that they should grade U. S. No. 1, and that inspection certificates should be furnished the purchaser.

"The record can be searched from beginning to end and there is no testimony by anyone to the effect that Watson either asked or that Baker ever promised to furnish peaches which would grade U. S. No. 1, particularly on their arrival at Chicago, Illinois, or at any other place."

"There being, therefore, neither a warranty nor a promise nor even a request that the peaches would grade U. S. No. 1, or that an inspection certificate would be furnished, the entire case fails and everything else becomes immaterial."

Thus, there is a sharp dispute between the parties concerning the contract to purchase the peaches in that there is absolute disagreement between them as to the grade or quality of peaches to be furnished, the appellant contending at all times that they were to be U. S. grade No. 1, and the respondent without specific designation as to the agreed grade contending that at least U. S. No. 1 was not the grade or quality agreed to be sold, merely contending apparently that they were to be fine or fancy peaches. Aside from the text of the conversation between James Watson and respondent on Watson's second trip to respondent's orchards, when the contract was finally concluded, with regard to the grade or quality, there is other significant evidence which made it a jury question as to whether or not the contract was for the sale of U. S. No. 1's. First, all the boxes were before shipment labeled "U. S. No. 1", and before sale in the Chicago market, because they did not grade U. S. No. 1 (according to the evidence of the federal inspectors who examined the fruit at Chicago), these labels had to be taken off and were scratched off.

"In addition to the marks required to be placed upon any closed package of fruit grown in this state, as herein-

above provided [includes apples, peaches, or pears], the grower thereof [it is conceded respondent was the grower of these peaches], or association or organization of growers packing the same, shall mark upon the outside of such package the grade of the fruit contained therein * * *." (Sec. 22-801, I. C .A.)

"Any person who violates any provision of this chapter shall, upon conviction thereof, be adjudged guilty of a misdemeanor and shall be fined not less than twenty-five dollars nor more than $200.00, or shall be imprisoned in the county jail not less than ten days nor more than six month, or shall be punished by both fine and imprisonment." (Sec. 22-804, I. C. A.)

Furthermore, H. C. Dwight, an employees of appellant, visited respondent and showed him the telegram from the LaMantia Brothers to appellant indicating the peaches were not up to grade, detailing the latter part of the conversation as follows:

"He [Baker] said they were not out of grade. Well, I said, I didn't see the peaches but the government inspectors say they were, and I said, Mr. Baker isn't it a fact the peaches I looked at the day I—the first time I was out here, the peaches you were shipping that day had all printed U. S. No. 1 on the box, and he said, they did, and I said, isn't it a fact that all the peaches that you shipped to J. C. Watson Company were labelled U. S. No. 1, and he said, yes, and by God they were No. 1. Well, I said, there seems to be a difference of opinion between you and the inspectors."

If the contract was for U. S. No. 1's, appellant was required to accept only peaches of such grade. (*Peck v. Nixon*, 47 Ida. 675, 277 P. 1112.)

It is urged appellant is liable for the full purchase price on the ground that there had been such acceptance under 62-308, I. C. A., as to prevent its being entitled to the defense of breach of warranty and rescission therefor, because the peaches were sold by appellants through LaMantia Brothers, and that such resale was conduct inconsistent with rescission. Such contention overlooks Sec. 62-507, I. C. A. Appellant having made its election of remedy under 62-507 (1-d) and (2), I. C. A., subd. 5 of that section defines its rights and liabilities as the buyer thus:

"62-507. Remedies for breach of warranty.—1. Where

there is a breach of warranty by the seller, the buyer may, at his election:

* * *

"d. Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received return them or offer to return them to the seller and recover the price or any part thereof which has been paid.

"2. When the buyer has claimed and been granted a remedy in any one of these ways, no other remedy can thereafter be granted.

* * *

"5. Where the buyer is entitled to rescind the sale and elects to do so, if the seller refuses to accept an offer of the buyer to return the goods, the buyer shall thereafter be deemed to hold the goods as bailee for the seller, but subject to a lien to secure the repayment of any portion of the price which has been paid, and with the remedies for the enforcement of such lien allowed to an unpaid seller by Sec. 62-402."

Sec. 62-307, I. C. A., gives a right of inspection:

"62-307. Right to examine the goods.—1. Where goods are delivered to the buyer, which he has not previously examined, he is not deemed to have accepted them unless and until he has had a reasonable opportunity of examining them for the purpose of ascertaining whether they are in conformity with the contract.

"2. Unless otherwise agreed, when the seller tenders delivery of goods to the buyer, he is bound, on request, to afford the buyer a reasonable opportunity of examining the goods for the purpose of ascertaining whether they are in conformity with the contract.

* * *"

The evidence shows appellant's employees looked over some peaches in the orchards and in the packing house at respondent's place and complained of some of the peaches packed; respondent stated these should not have been and would not be included.

Upon receipt of the peaches at Chicago and ascertainment there, by reason of the federal inspector's report that the peaches were not U. S. grade No. 1, two telegrams were sent on September 4, as follows:

"W. E. Baker, Home, Oregon.

Talked Chicago. Second car arrived out of grade similar first car. Our buyer refuses car account never graded U. S. One. Unable to get accept any allowance. Will either handle for your account or turn over to your representative. For your information Chandler-Allen placed your car 52325 auction. Sold Hales .45—.80. So you can see condition peaches. Advise. J. C. Watson Co."

"W. E. Baker.

Absolutely cannot accept peaches account you didn't give us U. S. One with certificate as agreed and stamped on boxes. Advise disposition of five cars. J. C. Watson Co."

A further telegram was sent September 5, as follows:

"W. E. Baker, Home, Oregon.

We are not accepting peaches. Have stopped payment all checks account your failure deliver peaches as labeled U. S. One. Unless hear contrary immediately will handle for your account only. J. C. Watson Co."

Respondent replied by wire as follows:

"J. C. Watson Co., Parma, Ida.

Peach deal is out of my hands and I cannot make any changes. W. E. Baker."

"J. C. Watson Co., Parma, Ida.

It's up to you to dispose of those peaches to your best advantage. W. E. Baker."

After the receipt of the first car and inspection thereof at Chicago, and ascertainment of the fact that the peaches did not come up to the grade appellant contends it purchased, the bank was notified to stop payment on the checks theretofore given respondent in payment of said fruit. Respondent was notified of such order to stop payment of all the checks on the 5th of September, the day the last car arrived in Chicago.

Respondent urges the peaches should have been examined at Laramie, Wyoming, and that consequently their not being there examined and rejected constituted an acceptance. Conceding that the buyer should examine

goods and notify of rejection and rescission because of breach of warranty as soon as reasonably possible, the question of what was reasonable as to time and place was a jury question. (55 C.J. 420, et seq.; *Brennan & Cohen v. Nolan Laundry Co.*, 209 Iowa 922, 229 N. W. 321; *Laganas Shoe Mfg. Co. v. Sharood*, 173 Minn. 535, 217 N. W. 941; *Rotary Shirt Co. v. Meltzer*, 197 App. Div. 102, 188 N.Y.S. 663; *Union Paint etc. Co. v. Dean*, 48 R.I. 288, 137 Atl. 469; *Gladstein v. Manhattan Swiss Embroidery Co.*, 183 N.Y.S. 16; *Belmont Silk Co. v. Naschkes*, 189 N.Y.S. 112; *Emerson-Brantingham Implement Co. v. Ware*, 71 Okla. 19, 174 P. 1066.)

▮ Inspection is to be made at the destination, and a reasonable time therefor is allowed. (*Rivers Bros. Co. v. Putney*, 27 N. M. 177, 199 P. 108, 27 A. L. R. 520, and cases in note at 524.)

▮ It is urged, however, that even though it be conceded that inspection should have been made at the destination rather than at the point of delivery, because the original billing was to Laramie, and thereafter the cars were diverted by appellant to Chicago, the right of inspection should have been exercised at Laramie, and since it was not, there was complete, final, and absolute acceptance under Sec. 62-308, I. C. A., as a matter of law, which deprived appellant of the right to rescind because the peaches were not of the quality ordered. It will be noticed that there are a number of independent clauses in Sec. 62-308, the occurrence of any one of which constitutes acceptance; acceptance, however, not being final or conclusive because of Sec. 62-309, I. C. A.

"62-309. Acceptance does not bar action for damages.— In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know such breach, the seller shall not be liable therefor."

That section includes in the phrase "other legal remedy" the buyer's right of rescission under Sec. 62-507. (55 C. J. 268.)

"The purchaser who concludes that the article purchased is not what is was represented to be, or what he had a right to believe it was or should be, cannot, after such discovery, go on using the article and thereafter refuse to pay the agreed purchase price. He may after such discovery repudiate the contract, return the article and demand return of any consideration paid. This is a rescission. He may, on the other hand, retain the article and claim such damages as he has sustained through breach of the contract by the vendor." (*West v. Prater,* 57 Ida. 583, at 596, 67 P. (2d) 273.)

While there is no dispute that appellants diverted the shipment from Laramie to Chicago, the effect of this diversion and the conclusions to be drawn therefrom are, at most, questions of fact. (*Moyer v. Hyde,* 35 Ida. 161, at 165, 204 P. 1068, 28 A. L. R. 695.)

In *Kitterman v. Eagle Pine Co.,* 122 Ore. 137, 257 P. 815, there was a diversion from the original point of delivery. A similar contention was made as herein. The court stated the proposition as follows:

"Was it the duty of defendant to inspect the lumber at Waters Creek, the point of shipment; or Grants Pass, Ore., designated as the place of f.o.b. delivery; or at the point of final destination?

"The contract makes no express provision relative to inspection. * * *

"The lumber mentioned in the contract of sale was specifically described and the minimum prices therein quoted were 'on bright lumber only.' It is clear that a warranty existed that the lumber shipped would comply with the description and specifications of the contract of sale, and was of a merchantable quality. (Sec. 8178, Or. L.)

"The right of inspection is to enable the buyer to ascertain whether the goods delivered conform to the contract of sale. Where and when this right is to be exercised depends on the nature of the contract, the character of the goods, the manner in which they are shipped, and any other fact or circumstance tending to show what was within the contemplation of the parties, as expressed in their contract, or by their conduct in reference thereto. The law applicable to such right is in keeping with reason and common sense. It is apparent that a higher degree of diligence should be exercised in reference to the inspection of perishable

goods than those which are not of such character. Furthermore, in determining the time of inspection, it is important to take into consideration the manner in which the goods were packed or shipped. It is the purpose of the law to give the buyer a reasonable opportunity to examine the goods delivered before there is a completed sale.

"In the instant case it is well to bear in mind that the lumber was placed on board the cars by the plantiff and did not come into actual possession of the defendant until it was finally delivered upon order to its customers. When and at what place, therefore, did the defendant have a reasonable opportunity to examine this lumber. Certainly it was not its duty to inspect the lumber before it was shipped, as no part of the payment of the purchase price was due until it had been delivered at Grants Pass. We may well eliminate under the authority of *Eaton v. Blackburn*, 52 Or. 300, 96 P. 870, 97 P. 539, 20 L. R. A. (N. S.) 53, 132 Am. St. Rep. 705, 16 Ann. Cas. 1198, Waters Creek as a place of inspection.

"Was it the duty of defendant to inspect the lumber at Grants Pass while in transit to its final destination? We answer: No; the parties to the contract did not so contemplate. Ten per cent of the purchase price was reserved to be paid 'upon the receipt of arrival (of lumber) and acceptance by their (defendant's) customers.' Plaintiffs specifically agreed to deliver this lumber upon order of defendant. It would be unreasonable to unload the cars at Grants Pass for the purpose of inspection and reload them in order to make final delivery. The delay and expense thereby incurred would tend to defeat the very object of their common enterprise, viz., the securing of a profit upon resale.

"The rule is well stated in 23 R. C. L. 1433:

" 'It is the general rule that, where goods are ordered of a specific quality, which the seller undertakes to deliver to a carrier to be forwarded to the buyer at a distant place, the right of inspection, in the absence of any specific provision in the contract, continued until the goods are received and accepted at their ultimate destination; in such a case the carrier is not the agent of the buyer to accept the goods as corresponding with the contract, although he may be his agent to receive and transport them'—citing numerous cases, among which are *Eaton v. Blackburn*, sup-

ra, and *Pope v. Allis,* 115 U. S. 363, 6 S. Ct. 69, 29 L. Ed. 393, which support the text.

"Relative to the place of inspection, see Williston on Sales (2d Ed.) Sec. 480, wherein it is said:

" 'Difficult questions may arise here, especially where the contract requires shipment of the goods on the buyer's order. An important line of distinction seems to be this: If the goods are delivered to the buyer, even though he immediately ships them to another destination, and it is expected that he shall do so, the general rule that the place of delivery is the place of inspection applies, unless having regard to the nature of the goods, or the way in which they are packed, it is unreasonable that the goods should be examined there. On the other hand, if the seller is to ship the goods, the place of inspection in the absence of agreement to the contrary is the destination of the goods, even though shipping directions may be given to the seller to send the goods to places other than the buyer's residence"—citing *Holt v. Pie,* 120 Pa. 425, 14 A. 389, which is particularly in point."

See also *Industrial Lbr. Co. v. Northside Lbr. & Bldg. Co.,* (Tex.) 254 S. W. 512; *Eaton v. Blackburn,* 52 Ore. 300, 96 P. 870; *Struthers-Ziegler Cooperage Co. v. Farmers' Mfg. Co.,* 233 Mich. 298, 206 N. W. 331; *Standard Paint & Lead Works v. Spruill,* 186 N. C. 68, 118 S. E. 891; *Brown v. Price,* 207 Ky. 8, 268 S. W. 590; *Browning-Ferris Mach. Co. v. Thomson,* (Tex.) 58 S. W. (2d) 183; *Rosenbaum Hardware Co. v. Paxton Lbr. Co.,* 124 Va. 346, 97 S. E. 784; *N. W. Helm Feed & Coal Co. v. Butler County Milling Co.,* (Mo.) 269 S. W. 630; *Olsen v. McMaken & Pentzien,* 139 Neb. 506, 297 N. W. 830; *Hostler Coal & Lbr. Co. v. Stuff,* 205 Iowa 1341, 219 N. W. 481; *Gorman v. Kennedy,* 126 Mich. 182, 85 N. W. 458; *Rivers Bros. Co. v. Putney,* 27 N. M. 177, 199 P. 108; *Turlock Merchants & Growers v. Smith,* 80 Cal. App. 263, 251 P. 683; *Holt v. Pie,* 120 Pa. 425, 14 Atl. 389.

These peaches were perishable, and the only showing made is that appellant promptly notified respondent that it refused to accept the peaches because they did not conform to the contract and offered to return them or hold them for the seller's disposition. (*J. I. Case Co. v. Bird,* 51 Ida. 725, 11 P. (2d) 966; 95 A. L. R. 764n, 774n; 127 A. L. R. 141n, 143n. Under these circumstances, in addition to the statutory authority making the buyer the bailee,

there operated the rule that the buyer should do everything to lessen injury or damage, which, of course, required the immediate sale of these peaches since they were perishable; and such sale did not amount to an acceptance under Sec. 62-308, as a matter of law. It presented a jury question which should not have been foreclosed against appellant by an instructed verdict.

"It was midsummer when the cargo of peaches, from Georgia, inferior in quality to those for which the defendant had contracted and had a right to expect, arrived in Providence, where there was no market for such fruit. The defendant forthwith notified the plaintiff by telegraph of its refusal to accept them, and asked for instructions concerning the disposal of the peaches in Boston, where there was a market for that grade and quality of fruit. The plaintiffs refused to instruct the defendant in the matter, and claimed performance of their part of the contract. The defendant confronted this condition: A car load of perishable goods, abandoned by the owner, had been left in its charge by the railroad company, which looked to the defendant for payment of the freight. In order to save the goods and protect the owners to any extent, immediate action was imperatively necessary. Ample notice had been given to the owners without avail. Evidently they had doubts as to the sincerity of the defendant's refusal, and were too far away to investigate for themselves. Moreover, they made no attempt to employ any agent to look after their interests in Providence. The defendant could have rested upon its rights and remained inactive, with the result that, unless the plaintiffs changed their views regarding the matter and took some steps looking toward the disposition of the fruit, or the railroad company sold the same to pay freight charges, or something unlooked for intervened to prevent it, the peaches would have perished without benefit to any one. In the absence of the plaintiffs, unrepresented, the defendant, having knowledge of the existing conditions, and having the goods cast upon it in this emergency, not only had the right to protect itself from the freight charges, but also to prevent the owners from needlessly sacrificing their goods without benefit, and at a total loss to themselves, with additional freight charges, through ignorance and obstinacy. 'It not infrequently happens that the seller, when notified that the goods are not in conformity with the contract, and when requested to remove

them, fails to do so, claiming that the contract has been properly fulfilled. Under these circumstances it may be clearly the best thing to do, from a business standpoint, for the buyer, in whose possession the goods are, to sell them at once and leave the question whether the goods fulfilled the terms of the contract or not to subsequent determination. Where goods are perishable, or expensive to keep, or of fluctuating value, any other course is attended with loss to one party or the other. Accordingly it has been held, and it seems reasonable, that the buyer, though refusing to take title because the goods are not what he bargained for, may, after notifying the seller of his rejection and requesting him in vain to remove the goods, resell them on account of the seller.' [Citing authorities.]

"An application of the Golden Rule is indicated in cases like the present, and for such application the defendant ought not to be penalized through a technicality. As the absent plaintiffs had no agent to take care of their interests, and as it was necessary that their interests should be cared for to save them from loss, the defendant had a right to act as agent for them ex necessitate rei." (*Descalzi Fruit Co. v. William S. Sweet & Son,* 30 R. I. 320, 75 Atl. 308, 27 L. R. A., N. S. 932.)

(*Sorensen v. Webb,* 37 Ida. 13, 214 P. 749; *White v. Schweitzer,* 221 N. Y. 461, 117 N. E. 941; *Barnett v. Perrine* (Tex.) 250 S. W. 1111.)

An enlightening case which construes the uniform sales act the provisions being identical with our statute, and under circumstances very similar to the instant situation is *Wilson & Co. v. Werk Co.,* 104 Ohio 507, 136 N. E. 202, 24 A. L. R. 1438; and the note thereto appended at 1445 contains cases supporting the proposition contained in the statute that where the seller refuses to receive the property rejected by the buyer on account of breach of warranty, the resale by the buyer to the account of the seller of the perishable property is the proper and, in fact, the only procedure to be followed. (*Sorensen v. Webb,* supra.)

It must be kept in mind that the question involved is the correctness of the order of the trial court giving an instructed verdict, which amounts to a nonsuit. We are passing only upon the question of whether or not there was sufficient evidence to go to a jury. Under the above authorities it was clearly contrary to the sales statute and its construction to refuse to permit the case to go to the

jury. (*Walker v. Idaho Lettuce Co.,* 44 Ida. 478, 258 P. 931; *Thiessen Land Co. v. Metz Livestock Co.,* 61 Ida. 161, 99 P. (2d) 50.)

The facts in *Gross Mfg. Co. v. Redfield,* 48 Ida. 399, 282 P. 487, so clearly distinguish it from the situation herein that further elucidation as to its inapplicability is unnecessary.

Appellant's conduct has been entirely consistent under the sales statute in its insistence that, first, the peaches were not of the grade contracted for, second, and on account thereof, rescission, prompt notice thereof, and offer to return, rejection and renunciation of further responsibility by respondent necessitated the third step, sale by the buyer and tender of the proceeds, which, though rejected, is all that respondent is entitled to if appellant makes its case before a jury and secures a verdict. On the other hand, of course, these contentions are disputed by respondent. The cause should have been submitted under proper instructions to a jury to determine the issues as above outlined and presented.

The cause is reversed and remanded with directions to grant a new trial. Costs to appellant.

Budge, J., and Koelsch, D.J., concur.

AILSHIE, J. (Concurring specially.)—I concur in granting a new trial but not upon all the grounds stated in the majority opinion. I do not think the authorities cited support the conclusions reached by the majority opinion, as to the legal effect, or, rather, lack of effect, of diversion of shipment from Laramie to Chicago by the consignee.

In *Kitterman v. Eagle Pine Co.,* 122 Ore. 137, 257 P. 815, from which the majority opinion quotes, there was no question of *diversion* of a shipment, as the case was submitted on stipulation of facts; and it appears that the only question submitted to the court was as to when and where the *inspection* was to take place. As bearing on that question, the opinion, *inter alia,* states as follows:

"Upon defendant's order, plaintiffs, between July and November, 1923, loaded a total of 20 cars of dry pine lumber to be shipped to the various customers of the defendant at Council Bluffs, Iowa, and other designated points in the middle west. The lumber was hauled by the Oregon Coast Railway Company over its line from plaintiffs' mill to Grants Pass and from there it was trans-

ported on the Southern Pacific lines to ultimate destination. Defendant's office and principal place of business was at Grants Pass or the junction of the two railway lines above mentioned.

"It is conceded by counsel that the decision of the case hinges upon the construction of the contract relative to the matter of inspection. No question of fact is involved.

. . . .

"Was it the duty of defendant to inspect the lumber at Waters Creek, the point of shipment; or Grants Pass, Ore., designated as the place of f.o.b. delivery; or at the point of final destination?

"The contract makes no express provision relative to inspection. We are to determine what was within the contemplation of the parties concerning the place of inspection by the nature and character of the contract and by the conduct of the parties in reference thereto."

It also seems to me that the majority opinion misapprehends the facts of *Descalzi v. Wm. S. Sweet and Son*, 30 R. I. 320, 75 Atl. 308, 27 L. A. R., N. S., 932, 136 Am. St. Rep. 961, from which quotations are made. In the latter case, there was no diversion of the shipment until *after* the purchaser had declined to accept the peaches shipped and notified the vendor of the inspection, and that they did not come up to the standard of peaches contracted to be shipped. After the vendor refused to take over the shipment and wired the purchaser, "Car yours care not what you do with it . . . .", it was then that the purchaser diverted the shipment from Providence to Boston and had them sold on the market as the property of the shipper.

So it will be seen, from an examination of the two principal cases relied on, that neither one deals with or is authority for the holding, that the diversion of the shipments involved in this case from Laramie to Chicago was not acceptance of the goods purchased. When the contract of purchase was made, it was understood that the shipments were to be made to Laramie, Wyoming; and the shipments were made in accordance therewith and bills of lading read as follows:

"Received, . . . . at Home, Oregon Aug. 30, 1941, from W. E. Baker Home, Oregon the property described below, . . . . Consigned to J. C. Watson Co. Destination Laramie State of Wyoming, County of................................................ Route Union

Pacific. . . . 1120 Double Layer Bxs Peaches 420 Single Layer Bxs Peaches . . . . Allow inspection.''

When the consignee diverted this shipment of perishable property from Laramie to Chicago, he waived the right of rescission and return of fruit and elected to seek his remedy in damages, if any, under the provisions of the Sales Act, Secs. 62-308 and 62-309, I. C. A., reading as follows:

"62-308. *What constitutes acceptance.* The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them.''

"62-309. *Acceptance does not bar action for damages.* In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know such breach, the seller shall not be liable therefor.''

See Secs. 48 and 49 and annotations, Uniform Sales Act (Vol. 1, Uniform Laws Anno., pp. 270-297.)

It is a wholesome provision of the law, and highly conducive to commercial transactions, to allow a purchaser, who buys on samples or representation, to accept and use or sell the goods, even though below the warranty, and then recover reasonable damages for the breach of warranty or representation, for the reason that customers want and sometimes require the goods, even though not of the grade or quality they most desire.

Here the consignee rendered it impractical, if not impossible, for the consignor to accept the shipment after it reached Chicago and deal with it at that point or return it to Laramie, or Home, Oregon. The diversion of the shipment, and to that extent, the acceptance of the same, did not deprive the consignee of his right to claim damages, under Secs. 62-309, supra, and 62-507, for breach of any warranty that may have been made. Such a contingency

is specifically provided for by Subd. 1 (a and b) of Sec. 62-507, providing as follows:

"1. Where there is a breach of warranty by the seller, the buyer may, at his election:

"a. Accept or keep the goods and set up against the seller, the breach of warranty by way of recoupment in diminution or extinction of the price.

"b. Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty."

Now as to where the inspection was to be made is properly an issue for the jury to determine on the trial after all the evidence is in; and it is also a question for the jury, as to whether or not there was a warranty that the peaches shipped should be "grade as U. S. No. ones."

It was up to the purchaser to observe some of the admonitions of the Golden Rule, which the Rhode Island court invokes in the quotation contained in the majority opinion. He could not make a contract for purchase and shipment of a number of carloads of perishable goods like ripe peaches and have them shipped to him at Laramie, Wyoming, 847 miles run by rail from Home, Oregon, and, at the same time, give his check in payment for the same; and then divert the shipment and, after they reached Chicago (1051 miles farther east) stop payment on the checks and then notify his shipper that the fruit was on the cars in the Chicago yards, and that he could do as he pleased with them.

"There are two kinds of acceptance,—" said Justice Lamar, in *D. L. & W. R. Co. v. U. S.*, 231 U. S. 363, 58 L. ed. 269, 273, *"one of quality and the other of title.* They are not necessarily contemporaneous. There may be an acceptance of quality before delivery, as where goods are selected by the purchaser, delivery and transfer of title being postponed until a later time. Or, *there may be an acceptance of title without an acceptance of quality;* so that in many cases, after the title has passed, the purchaser may recover damages if the goods, upon inspection, prove to be of a quality inferior to that ordered." (Italics supplied.)

Where an article is purchased and, after its receipt, is found defective by the vendee or not of the standard, grade, quality or kind ordered, it is sometimes easy and convenient to return it without loss or depreciation and at slight cost of redelivery; but in many cases of long distance,

shipment is too expensive to return the property to the vendor at the place from which shipped, and, due to lack of agent or acquaintance at place to which the consignment has been shipped, it is wholly impracticable for the vendor to take possession and dispose of the property at the distant point to which it has been diverted. The law therefore requires the purchaser to take charge of the property and dispose of it as the vendor's agent, to the best practical advantage, in case the vendor refuses to accept the return of goods. (*Jones v. Bloomgarden,* 143 Mich. 326, 106 N. W. 891, 24 A. L. R., p. 1446 n; *Hitchcock v. Griffin & S. Co.,* 99 Mich. 447, 41 Am. St. Rep. 624, 58 N. W. 373; *Tripis v. Gamble* (Tex. Civ. App.) 28 S. W. 244; *Rubin v. Sturtevant,* 26 C. C. A. 259, 51 U. S. App. 286, 80 Fed. 930.)

It is true, that if the fruit were not up to the warranty (if there was a warranty), the purchaser may have such damages as he sustained; but he had the fruit on his hands after diverting the shipment to another destination. (*West v. Prater,* 57 Ida. 583, 596, 67 P. (2d) 273; *Grisinger v. Hubbard,* 21 Ida. 469, 481, 122 P. 853.)

Appellant should not be allowed to defeat respondent's action on the theory of rescission of the contract; but it should be allowed to offset the purchase price by whatever legal damages (if any) it has sustained for breach of warranty of fruit shipment, if the jury finds that there was any breach of warranty.

HOLDEN, C.J., (Dissenting.)—On or about August 25, 1941, plaintiff and respondent fruit grower, Baker, and defendant and appellant, J. C. Watson Co., entered into an oral agreement whereby plaintiff agreed to sell and defendant agreed to buy five carloads of Hale peaches, at a specified price. By the terms of the contract, plaintiff Baker was obliged to pick, pack, and deliver the peaches to defendant company f.o.b. the cars at Home, Oregon, and to bill each car to defendant at Laramie, Wyoming, sending the bills of lading to defendant's place of business at Parma, Idaho, for payment at the contract price as each car was loaded. Pursuant to this agreement, plaintiff loaded at Home, Oregon, and shipped five carloads of peaches to Laramie, Wyoming, billed as aforesaid; whereupon defendant transmitted to plaintiff four checks drawn upon the First National Bank of Boise, Idaho, Parma Branch, in payment of the first four cars so loaded and shipped by plaintiff.

The peaches were not stopped at their destination—Laramie, Wyoming—but, instead, were diverted by defendant to the LaMantia Bros. Arrigo Co., Chicago, Illinois. As the cars arrived at Chicago, the Chicago firm called defendant stating the peaches did not grade U. S. No. Ones on account of "curculio injury." Defendant then wired plaintiff as follows:

"Absolutely cannot accept peaches account you didn't give us U. S. One with certificate as agreed and stamped on boxes. Advise disposition of five cars.

(SIGNED)  J. C. Watson Co."

To which plaintiff wired defendant:

"Its up to you to dispose of those peaches to your best advantage.

(SIGNED)  W. E. Baker."

Defendant wired again that:

"We are not accepting peaches. Have stopped payment all checks account your failure deliver peaches as labelled U. S. One. Unless hear contrary immediately will handle for your account only.

(SIGNED)  J. C. Watson Co."

The peaches were sold by LaMantia Bros. Arrigo Co. on the fruit auction ring in Chicago, and checks for the net proceeds of the sale were mailed to plaintiff. Plaintiff refused to accept the checks and returned them to that company.

This action was commenced November 29, 1941, to recover the contract price of the peaches. June 17, 1942, the cause was tried by the court, sitting with a jury. At the conclusion of the submission of proof by defendant, plaintiff Baker made the following motion for a directed verdict:

"Comes now the plaintiff and moves the court for an order instructing and directing the jury to return a verdict in favor of the plaintiff in the amount of $6053.65, together with $12.00 protest fees, with interest on each of said items at the rate of six percent per annum from September 3, 1941, upon the ground that if all the evidence introduced by the defendant in this case is taken and accepted as true, it fails to sustain the defense impleaded by the defendant, or any part thereof, and upon the further ground

that the following facts are either admitted in the pleadings, or proved conclusively and without contradiction by the evidence:

"That these peaches were sold to the defendant under on oral contract at Home, Oregon; that it was agreed that they should be by the plaintiff, picked and packed and loaded in the cars at Home, Oregon, at the agreed purchase price stated in the complaint, and that they should be shipped to the defendant at Laramie, Wyoming, with the copy of the bill-of-lading mailed to the defendant, as directed, and that on the first four cars the defendant actually paid for the peaches and then stopped payment; that the defendant not only diverted these cars from Laramie, Wyoming, to Chicago, Illinois, but sold them to LaMantia Bros. Arrigo Co. in Chicago, Illinois, and that the act of the defendant in so diverting these cars from the point of shipment at Laramie, Wyoming, his act in re-selling them and re-billing them to LaMantia Bros., and his act in paying the purchase price on four cars constituted in law a complete acceptance by the defendant.

"That the defense impleaded in this case is a defense of non-acceptance; it is not a defense of breach of warranty with offset in damages. I believe that is the extent of our motion."

The trial court granted the motion and entered judgment in favor of plaintiff and against the defendant company for the sum of $6065.25, the contract price of the five carloads of peaches, with interest. The company then prosecuted an appeal to this court from the judgment.

In limine, it may be stated there is no dispute between the parties concerning either the contract to purchase the peaches or the price to be paid. While numerous contentions are made by appellant, actually, the record presents but one question, and it is decisive, to-wit: Were the peaches *accepted,* as contended by Baker, *or not accepted,* as contended by the company? In this connection, the record discloses the company pleaded:

*"that it notified plaintiff that the defendant could not accept the peaches* on account the plaintiff failed to deliver U. S. No. Ones as agreed, and that the *defendant finally notified the plaintiff that it refused to accept said peaches and had stopped payment on all checks;* * * * and that unless defendant heard from plaintiff to the contrary, defendant would

handle said peaches for the account of the plaintiff only; * * *." [Emphasis mine.]

And, on this appeal appellant urges:

"that the facts pleaded in the answer are amply sufficient to show both the defense of recission and recoupment, or a combination of the two defenses, and breach of condition subsequent."

To rescind a contract is to cancel and annul it. On the other hand, to recoup is to reduce the amount otherwise recoverable on account of some breach of warranty. If the contract sued upon here were cancelled and annulled, as insisted by the company, there could be no contract to breach. Hence, these defenses are so inconsistent that proof of one would necessarily disprove the other; in fact, these defenses flatly contradict each other. This court held in the early case of *Murphy v. Russel & Co.*, 8 Ida. 133, 134, 67 P. 421, that:

"Under the provision of Sec. 4187 of the Revised Statutes [now Sec. 5-616, I. C. A.], the defendant is permitted to set forth in his answer as many defenses and counterclaims as he may have, and such defenses may be, to a certain extent, inconsistent with each other, but must not be so inconsistent that the proof of one would necessarily disprove the other."

See also *Harshbarger v. Eby*, 28 Ida. 753, 156 P. 619.

We come now directly to the discussion of the decisive question presented on this appeal: Did the company *accept* the peaches?

Sec. 62-308, I. C. A., of our Uniform Sales Act defines acceptance as follows:

"The *buyer* is deemed to have *accepted* the goods when he intimates to the seller that he has accepted them, or *when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller*, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them." [Emphasis mine.]

This court construed Sec. 62-308, supra, in *Gross Mfg. Co. v. Redfield*, 48 Ida. 399, 282 P. 487, where the identical question under discussion was presented for decision. Following a lengthy review of pertinent authorities, this court held that a buyer is deemed to have accepted goods where, as in the case at bar, the goods have been delivered to him,

and he does any act, for instance, selling part of the goods (in the case at bar all five cars of peaches were sold), which is inconsistent with the ownership of the seller, and that under such circumstances, the seller (in this instance, Baker) could "maintain an action for the price, as was done." To the same effect: *Whatley v. Weston, Dodson & Co.*, 289 Pa. 36, 136 A. 849; *Simonoff v. Parsons*, 52 Okl. 600, 153 P. 152; *Babcock v. Hutchinson*, 4 Lans. (N. Y.) 276.

It will have been noticed the company pleaded it refused to accept and did "not accept the peaches"; in other words, the company wholly relied upon the defense of "nonacceptance" to defeat a recovery of the contract price of the peaches. The record shows, without dispute, the defendant company sold all of the peaches to the Chicago company. Surely the sale of the peaches by the defendant company constituted an "act inconsistent with the ownership of the seller", Baker, in that the sale of the peaches by the defendant company completely divested Baker of his title to and ownership of the peaches and vested title to and ownership of the peaches in the Chicago concern, to whom the defendant company sold the peaches. The sale of the peaches at once brought the defendant company within the provisions of Sec. 62-308, supra, and the rule announced by this court in *Gross v. Redfield*, supra. There is not one whit difference between the position of Baker, the seller in the case at bar, and Gross, the seller in *Gross v. Redfield*, supra. The facts as to a sale are the same and the statutory provisions are the same. Gross, the seller, recovered the purchase price of his merchandise, but Baker is denied a recovery. The effect of the majority opinion is to nullify the provisions of Sec. 62-308, supra, and to reverse *Gross v. Redfield*, supra, in that now, under the majority opinion, the sale of either a part or all the merchandise a buyer contracts to purchase is no longer so inconsistent with the ownership of the seller, as provided by Sec. 62-308, supra, and expressly held by this court in *Gross v. Redfield*, supra, as to render the buyer liable for the entire purchase price

in an action by the seller to recover. Now, a buyer may sell all or any part of the goods he purchases without becoming liable to the seller for the price he has contracted to pay, by the simple, ever-ready device of wiring the seller the goods are not what the seller warranted them to be. Of course, if, as a matter of fact, goods are not what they were warranted to be, the buyer can always fully protect himself by simply refusing to accept the goods shipped to him; in which case, where the shipment is perishable in nature, for instance, peaches, as in this case, the seller should also be given an opportunity to protect himself by selling his peaches through a broker of his own choice. However, the real reason underlying the action of the defendant company in the case at bar—to use the vernacular— "the nigger in the wood pile," as disclosed by the record, is the fact that the price of peaches slumped heavily on the Chicago market. Of course that situation required the prompt use of certain peach buyers' [as well as out of state potato buyers'] old, well-known, quite threadbare "defense," to-wit: "You didn't give us U. S. No. Ones as agreed."

Finally, in the instant case, appellant had an opportunity to inspect the peaches at Home, Oregon, as well as at their destination—Laramie, Wyoming. The place where a purchaser is required to make inspection is the point where the goods are first received. [*Bassi v. Walden*, 64 Cal. App. 764, 222 Pac. 866; *Perryman Burns Coal Co. v. Northwestern Fire & Marine Ins. Co.*, 223 N. Y. S. 559, 130 Misc. 396.] And, acceptance by appellant after it had an opportunity to inspect the peaches constitutes a waiver of the alleged defect of quality. [*Caldwell v. Higgenbotham*, (N.M., 1915), 151 P. 315; *Twin Cities v. Armstrong*, 116 Okl. 237, 244 P. 196; *Lewiston Milling Co. v. Cardiff*, (C. C. A. 9th, 1920), 266 Fed. 753, 764; *Western Forest Products Co. v. Woodhead Lmbr. Co.*, 92 Cal. App. 194, 267 P. 901; 55 C. J., p. 444.]

It follows from what I have said the judgment in favor of Baker should be affirmed.